THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* BENJAMIN NAHMAN, MILTON SELIGMAN, MORRIS J. SCHWARTZ, CHARLES INTRATOR, NELSON LEVITT, NORMAN STERNBACH, MORRIS DIMOWITZ, IRVIN GREENBERG, JOSEPH E. NAHEM, SOL WOOLIS, BERNARD SILVERMAN, ALBERT SHAFRAN and NATHAN LITWACK, Appellants.

Argued April 22, 1948; decided July 16, 1948.

*Bertram Bakerman* for appellants.   I. Section 21 of the Park Department Regulations on its face contravenes the due process

clause of the Fourteenth Amendment to the Constitution of the United States and is therefore void. (*Gitlow* v. *New York,* 268 U. S. 652; *Near* v. *Minnesota,* 283 U. S. 697; *Cantwell* v. *Connecticut,* 310 U. S. 296; *Lovell* v. *Griffin,* 303 U. S. 444; *Hague* v. *C. I. O.,* 307 U. S. 496.) II. Section 21 requires the securing of a permit before the rights of free speech, press, or assembly may be exercised. (*Schneider* v. *State,* 308 U. S. 147; *Largent* v. *Texas,* 318 U. S. 418; *Hague* v. *C. I. O.,* 307 U. S. 496; *Thornhill* v. *Alabama,* 310 U. S. 88; *Thomas* v. *Collins,* 323 U. S. 516.) III. Section 21 is directed against freedom of speech, of press, and of assembly per se and not against abuses thereof which might be properly subject to regulation. (*De Jonge* v. *Oregon,* 299 U. S. 353; *Lovell* v. *Griffin,* 303 U. S. 444; *Thornhill* v. *Alabama,* 310 U. S. 88; *Cantwell* v. *Connecticut,* 310 U. S. 296.) IV. Section 21 is directed solely at activities of a noncommercial character. (*Valentine* v. *Chrestensen,* 316 U. S. 52.) V. The fact that section 21 is limited in its application to areas under the jurisdiction of the park commissioner does not save its constitutionality. (*Hague* v. *C. I. O.,* 307 U. S. 496; *Schneider* v. *State,* 308 U. S. 147.) VI. Section 21 is void as applied to the activities of appellants. (*Carlson* v. *California,* 310 U. S. 106; *Thomas* v. *Collins,* 323 U. S. 516.)

*Ephraim S. London* and *Marion W. Perry* for The National Lawyers Guild, *amicus curiæ,* in support of appellants' position. I. The regulation unreasonably restricts freedom of communication and assembly and is therefore unconstitutional and void. (*Carlson* v. *California,* 310 U. S. 106; *Thornhill* v. *Alabama,* 310 U. S. 88; *People* v. *Muller,* 286 N. Y. 281; *People* v. *Kieran,* 26 N. Y. S. 2d 291.) II. The requirement that a permit be secured before ideas may be communicated is an unreasonable limitation of the right of communication. (*Schneider* v. *State,* 308 U. S. 147; *Thornhill* v. *Alabama,* 310 U. S. 88; *Lovell* v. *Griffin,* 303 U. S. 444; *Thomas* v. *Collins,* 323 U. S. 516; *Cantwell* v. *Connecticut,* 310 U. S. 296.) III. The regulation is void because of its failure to provide a standard of action to insure its impartial enforcement. (*Thornhill* v. *Alabama,* 310 U. S. 88.) IV. Freedom of communication in the public parks may not be abridged by ordinance or regulation. (*Hague* v. *C. I. O.,* 307 U. S. 496; *Marsh* v. *Alabama,* 326 U. S. 501; *Tucker* v. *Texas,* 326 U. S. 517.) V. The park commissioner in issuing the

regulation exercised the lawmaking power reserved to the Legislature. The regulation was therefore unconstitutional and void. (*Panama Refining Co.* v. *Ryan,* 293 U. S. 388; *United States* v. *Cohen Grocery,* 295 U. S. 78; *People* v. *Ryan,* 267 N. Y. 133; *People* v. *Grant,* 242 App. Div. 310, 267 N. Y. 508; *Schechter Poultry Corp.* v. *United States;* 295 U. S. 495.)

*Hayden C. Covington* for Watchtower Bible and Tract Society, Inc., and Jehovah's Witnesses as *amici curiæ,* in support of appellants' position. I. The regulation, on its face and as construed and applied to the facts, is not a permissible regulation but abridges appellants' rights of free speech, free press and free assembly by requiring a permit as a condition precedent to the exercise of such activity, contrary to the State and Federal Constitutions. (*Hague* v. *C. I. O.,* 307 U. S. 496; *Schneider* v. *New Jersey,* 308 U. S. 147; *Thornhill* v. *Alabama,* 310 U. S. 88; *Lovell* v. *Griffin,* 303 U. S. 444; *Thomas* v. *Collins,* 323 U. S. 516; *Massachusetts* v. *Gilfedder,* 321 Mass. 335; *Marsh* v. *Alabama,* 326 U. S. 501.) II. Respondent has wholly failed to discharge the burden placed upon it requiring it to show that the regulation is regulatory, that the park is restricted in dedication and use and that the permit required is a part of a valid regulatory scheme. (*De Jonge* v. *Oregon,* 299 U. S. 353; *Palko* v. *Connecticut,* 302 U. S. 319; *Cantwell* v. *Connecticut,* 310 U. S. 296; *Thomas* v. *Collins,* 323 U. S. 516; *West Virginia State Bd. of Education* v. *Barnette,* 319 U. S. 624; *United States* v. *Carolene Products Co.,* 304 U. S. 144.)

*Emanuel Redfield* and *Osmond K. Fraenkel* for American Civil Liberties Union, *amicus curiæ,* in support of appellants' position. The regulation is unconstitutional as a violation of the rights of freedom of speech and of public assembly. (*Hague* v. *C. I. O.,* 307 U. S. 496; *Schneider* v. *State,* 308 U. S. 147; *Marsh* v. *Alabama,* 326 U. S. 501; *Commonwealth* v. *Gilfedder,* 321 Mass. 335; *Lovell* v. *Griffin,* 303 U. S. 444; *Martin* v. *Struthers,* 319 U. S. 141; *Jones* v. *Opelika,* 319 U. S. 103.)

*Frank S. Hogan, District Attorney* (*Whitman Knapp, Edward T. Perry* and *Harold Roland Shapiro* of counsel), for respondent. The regulation, as limited by the administrative practice set forth in the commissioner's letter, is valid. (*Hague* v. *C. I. O.,* 307 U. S. 496; *Cox* v. *New Hampshire,* 312 U. S. 569;

*Williams* v. *Gallatin,* 229 N. Y. 248; *Matter of Kolb* v. *Holling,* 285 N. Y. 104; *People* v. *Dilliard,* 252 App. Div. 125; *Federal Trade Comm.* v. *Bunte Bros.,* 312 U. S. 349; *Minnesota* v. *United States,* 305 U. S. 382; *United States* v. *Jackson,* 280 U. S. 183; *Lieberman* v. *Van De Carr,* 199 U. S. 552.)

*John P. McGrath, Corporation Counsel* (*Seymour B. Quel, William S. Lebwohl* and *Philip V. Sherman* of counsel), for Park Commissioner of the City of New York, *amicus curiæ,* in support of respondent's position. The regulation does not prohibit or otherwise violate the rights of freedom of speech and assembly but is a valid and proper administrative regulation directed at the general convenience and welfare in the use and enjoyment by the general public of the public parks. (*Williams* v. *Gallatin,* 229 N. Y. 248; *Hague* v. *C. I. O.,* 307 U. S. 496; *Matter of Evans* v. *Berry,* 262 N. Y. 61; *Schieffelin* v. *Goldsmith,* 253 N. Y. 243; *Schieffelin* v. *Lahey,* 243 N. Y. 102; *Cox* v. *New Hampshire,* 312 U. S. 569; *Prince* v. *Massachusetts,* 321 U. S. 158.)

*Nathaniel L. Goldstein, Attorney-General* (*Wendell P. Brown* and *Ruth Kessler Toch* of counsel), for the State of New York, *amicus curiæ,* in support of respondent's position. I. To realize the purpose for which parks exist, regulation of activities therein and use thereof is essential. (*Williams* v. *Gallatin,* 229 N. Y. 248; *Perrin* v. *New York Central R. R. Co.,* 36 N. Y. 120.) II. Regulations requiring a permit for holding meetings, making speeches or parading in State parks are not an infringement of the right of free speech. Liberty is not license. (*People* v. *Most,* 171 N. Y. 423; *Crowley* v. *Christensen,* 137 U. S. 86; *Cox* v. *New Hampshire,* 312 U. S. 569; *United Public Works* v. *Mitchell,* 330 U. S. 75; *People ex rel. Doyle* v. *Atwell,* 232 N. Y. 96; *People* v. *Smith,* 263 N. Y. 255; *Hague* v. *C. I. O.,* 307 U. S. 496.)

*G. Frank Dougherty* and *Ruth I. Wilson* for Long Island State Park Commission, *amicus curiæ,* in support of respondent's position. I. The right to proclaim and discuss one's opinion in the public streets and parks is not absolute. Its exercise is necessarily limited by the many other public uses to which these places are dedicated. The regulation of these conflicting uses is a governmental duty. (*Hague* v. *C. I. O.,* 307 U. S. 496; *Cant-*

*well* v. *Connecticut,* 310 U. S. 296; *Schneider* v. *State,* 308 U. S. 147; *Jamison* v. *Texas,* 318 U. S. 413; *Frend* v. *United States,* 100 F. 2d 691; *Prince* v. *Massachusetts,* 321 U. S. 158.) II. Section 21 of article III is a general, nondiscriminatory regulation directed to preventing the various park uses from interfering with each other. (*Love* v. *Judge of Recorder's Court,* 128 Mich. 545; *Coughlin* v. *Chicago Park District,* 364 Ill. 90; *People ex rel. Doyle* v. *Atwell,* 232 N. Y. 96; *Davis* v. *Massachusetts,* 167 U. S. 43.)

LOUGHRAN, Ch. J. Each of the thirteen defendants stands convicted of exhibiting placards in City Hall Park in the city of New York without having obtained a permit therefor, contrary to section 21 of article III of the Rules and Regulations of the Department of Parks of the city. The acts complained of were committed on March 15, 1946, while Mr. Winston Churchill was entering the city hall for an official reception. On the placards that were then and there held aloft by the defendants were such declarations as "No American shall die for Churchill's empire" and "No American Sweat Blood and Tears for a Churchill's World War 3". There was evidence that the defendants also shouted, "We want peace Churchill wants war." But there was no charge of disorderly conduct. The one and only offense imputed to the defendants was an unauthorized carrying of placards in a public park. As appellants here, they challenge the permit requirement as a direct invasion of the right of freedom of speech and assembly which is guaranteed by the Fourteenth Amendment of the Federal Constitution and by sections 8 and 9 of article I of the Constitution of this State.

The pertinent text of the challenged regulation is as follows (Rules and Regulations of N. Y. City Agencies, Dept. of Parks, § 21):

"*Meetings, Exhibitions, Parades, Racing, etc.* No person shall erect any structures, stand or platform, hold any meeting, perform any ceremony, make a speech, address or harangue; exhibit or distribute any sign, placard, notice, declaration or appeal of any kind or description; exhibit any dramatic performance, or the performance in whole or in part of any interlude, tragedy, comedy, opera, ballet, play, farce, minstrelsy, dancing, entertainment, motion picture, public fair, circus,

juggling, rope-walking or any other acrobatics, or show of any kind or nature; or run or race any horse, or other animal, or, being in or on a vehicle, race with another vehicle or horse, whether such race be founded on any stake, bet or otherwise; in any park or upon any park street except by permit. No parade, drill or manoeuver of any kind shall be conducted, nor shall any procession form for parade or proceed in any park or park street without a permit.''

Such strong prohibitory words may on the face of them at first seem to suggest an unbounded power of antecedent administrative censorship that would obviously be void (cf. *Schneider* v. *State*, 308 U. S. 147, 162; *Largent* v. *Texas*, 318 U. S. 418, 422). But the challenged regulation does not stand alone. Authority therefor is to be found in chapter 21 of the Charter of the City of New York. Subdivision a of section 531 thereof says: '' There shall be a department of parks the head of which shall be the commissioner of parks who shall be appointed by the mayor.'' Section 534 thereof says: '' a. The commissioner shall have power to establish and enforce rules and regulations for the government and protection of public parks * * * which * * * so far as practicable shall be uniform in all boroughs and shall have the force and effect of law. b. Any violation of the rules or regulations of the commissioner shall be triable by a city magistrate and punishable by not more than thirty days' imprisonment, or by a fine of not more than fifty dollars, or by both.''

The limits of the jurisdiction so granted are indicated in section 532 of the same chapter 21 of the city charter by these words: '' The commissioner shall have the power and it shall be his duty: * * * 3. To maintain the beauty and utility of all parks, squares, public places and playgrounds and other recreational properties, except those within the jurisdiction of the department of education, and to institute and execute all measures for the improvement thereof for ornamental purposes and for the beneficial uses of the people of the city.'' This last charter provision brings to light the real character and meaning of the regulation in question. No power to suppress the publication of facts or opinions is thereby conferred and the sole standard of official action thereby countenanced is the promotion of the beauty and utility of the public parks of the city — an objec-

tive which undoubtedly goes far to secure the safety, comfort and convenience of a population of more than eight million people. A permit process adapted to these charter purposes — if administered without discrimination — is, in our judgment, an entirely admissible procedure.

As is well known, there are areas of the park system of the city of New York — e.g., children's playgrounds and horticultural gardens — that cannot be used for meetings, parades and like affairs. More than that, such affairs, when held in other areas of the system, must be so placed that ornamental improvements — e.g., lawns and shrubbery — will not be damaged, and also must be so scheduled in point of time and separateness as not unduly to interfere with the beneficial uses of the system by the people of the city. For the public parks of that vast and congested community are the only places where a great part of its population can have any real opportunity for recreation in the open air and the only places where large numbers of its children can safely play.

In an unchallenged communication which is appended to the brief here submitted by the People, the commissioner of parks of the city sets forth the manner in which the regulation in question has heretofore been adminstered. He there says: " Meetings and other public events are never prohibited through the permit procedure but are merely scheduled and located as to area and time in an orderly way by making necessary adjustments in the place and time stated in the application for a permit where such adjustment is necessary in the interest of the comfort, convenience and protection of the general public in the use of the parks. The application procedure is used so as to limit the use of available areas to one group at a time and provide for proper police and other supervision where necessary so that meetings and other events will be orderly and without danger to the safety of others using the parks.'' The commissioner further shows this fact: Out of a total of 700 formal applications for permits to hold meetings or similar events, only 34 were denied in the period from January 1, 1946, to April 1948, and on each denial, the applicant was offered an alternative location. Thus the regulation in question appears to have been administered in the manner which we now construe it to require.

The regulation, we repeat, confers no power to suppress the

publication of facts or opinions. On the contrary, as we have tried to demonstrate, it is in essence a nondiscriminatory provision which has for its sole objective the safety, comfort and convenience of the people of the city in their appropriate uses of its public parks. To our minds, the regulation — so read — is a reasonable measure of local control which affects civil liberties only in an allowable minor degree. (See *Cox* v. *New Hampshire*, 312 U. S. 569, where the relevant constitutional propositions are stated. Cf. *Saia* v. *New York*, 334 U. S. 558.)

The judgment should be affirmed.

LEWIS, CONWAY, DESMOND, THACHER, DYE and FULD, JJ., concur.

Judgment affirmed.