THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ERIC HASS, Appellant.

Submitted February 24, 1949; decided April 20, 1949.

*Emanuel Redfield* for appellant. Section 21 of article III of the Rules and Regulations of the Department of Parks of the City of New York is unconstitutional on its face and as applied to defendant. (*Commonwealth* v. *Gilfedder,* 73 N. E. 2d 241; *Saia* v. *New York,* 334 U. S. 558; *Hague* v. *C. I. O.,* 307 U. S. 496; *Lovell* v. *Griffin,* 303 U. S. 444; *Martin* v. *Struthers,* 319 U. S. 141; *Jones* v. *Opelika,* 319 U. S. 103; *Jamison* v. *Texas,* 318 U. S. 413; *Schneider* v. *State,* 308 U. S. 147; *Thornhill* v. *Alabama,* 310 U. S. 88.)

*Miles F. McDonald, District Attorney* (*Solomon A. Klein* of counsel), for respondent. Section 21 of article III of the Rules and Regulations of the Department of Parks of the City of New York is constitutional. (*People* v. *Nahman,* 298 N. Y. 95; *Saia* v. *New York,* 334 U. S. 558; *Kovacs* v. *Cooper,* 336 U. S. 77.)

Conway, J. This is an appeal by permission of a Judge of this court from an order of the Appellate Part of the Court of Special Sessions of the City of New York, which affirmed a judgment of conviction of the Magistrate's Court of the City of New York convicting appellant of a violation of section 21 of article III of the Rules and Regulations of the Department of Parks of the City of New York and suspending sentence therefor.

The facts are not disputed. On the night of October 1, 1948, a police officer found a number of men erecting a stand at Eastern Parkway and Utica Avenue in the borough of Brooklyn, county of Kings, city and State of New York. After the stand had been erected the defendant mounted it and began to speak. The stand had been erected on the mall which separates the center driveway and the commercial driveway of Eastern Parkway. That mall constitutes the area between the two drive-

ways mentioned and is twenty-five or thirty feet wide. Upon it there are trees, a pedestrian walk and two rows of park benches facing each other with about twenty benches in each row. There is another mall, also running east and west and also between the main driveway and the commercial driveway which carries traffic in the opposite direction. That mall also has forty benches in two rows facing each other. Each bench seats about six people so that on the two malls separated by the center or main driveway there is room on the benches for approximately four hundred eighty people. The trees in the mall have ornamental fences around them and are dedicated to deceased veterans of the past two wars.

As the defendant began to conduct his meeting some fifty people gathered at the front of the stand. The defendant described himself as " a propagandist for our political campaign " and was espousing the candidacy of one Tigart of the Socialist Labor Party. The defendant said he was the editor of the " ' Weekly People ' " the official newspaper of that party.

After the defendant had been speaking for five or six minutes the police officer approached and asked if he had a permit from the park department permitting him to conduct the meeting. He said he did not and was thereupon served with the summons which lead to his conviction.

The defense then established that Eastern Parkway is a busy street upon which the traffic is heavy.

The only other witness called on either side was an assistant to the assistant borough director for the department of parks in Brooklyn. It was one of his duties to issue permits for meetings. He testified without contradiction that, for the location at which the defendant spoke, there never had been a denial of a permit when application was made for one unless someone else had already applied for and obtained a permit for that location for the same period. He said that this was one of the two places in the borough of Brooklyn which was considered by the park department to be a public forum or meeting place and at which it was felt that any type of ordinary meeting could be conducted. In fact, in his brief the defendant says " This location is a place designated by the Park Department for public speaking ".

The defendant however urges that section 21 of article III of the Rules and Regulations of the Department of Parks of the City of New York is unconstitutional and that therefore the order affirming the conviction must be reversed.

Section 21 reads as follows:

" Section 21. *Meetings, Exhibitions, Parades, Racing, etc.*

" No person shall erect any structures, stand or platform, hold any meeting, perform any ceremony, make a speech, address or harangue; exhibit or distribute any sign, placard, notice, declaration or appeal of any kind or description; exhibit any dramatic performance, or the performance in whole or in part of any interlude, tragedy, comedy, opera, ballet, play, farce, minstrelsy, dancing, entertainment, motion picture, public fair, circus, juggling, rope-walking, or any other acrobatics, or show of any kind or nature; or run or race any horse, or other animal, or, being in or on a vehicle, race with another vehicle or horse, whether such race be founded on any stake, bet or otherwise; in any park or upon any park street except by permit.

" No parade, drill or manoeuver of any kind shall be conducted, nor shall any procession form for parade or proceed in any park or park street without a permit."

Sanction for the foregoing regulation is found in sections 531, 532 and 534 of chapter 21 of the Charter of the City of New York. (*People* v. *Nahman,* 298 N. Y. 95.) In that case after discussing sections 531 and 534 we said (pp. 101–102): " The limits of the jurisdiction so granted are indicated in section 532 of the same chapter 21 of the city charter by these words: ' The commissioner shall have the power and it shall be his duty:  *  *  *  3.   To maintain the beauty and utility of all parks, squares. public places and playgrounds and other recreational properties, except those within the jurisdiction of the department of education, and to institute and execute all measures for the improvement thereof for ornamental purposes and for the beneficial uses of the people of the city.' This last charter provision brings to light the real character and meaning of the regulation in question.   No power to suppress the publication of facts or opinions is thereby conferred and *the sole standard* of official action thereby countenanced is the promotion of the beauty and utility of the public parks of the city — an objective which undoubtedly goes far to secure the

safety, comfort and convenience of a population of more than eight million people. A permit process adapted to these charter purposes — if administered without discrimination — is, in our judgment, an entirely admissible procedure.'' The regulation is in essence a nondiscriminatory provision having for its *sole objective* '' the *safety,* comfort and convenience of the people of the city in their appropriate uses of its public parks.'' (Emphasis supplied. *People* v. *Nahman, supra,* p. 103.) In this case we have again the internal evidence supplied by the language of this long-existing regulation, referring as it does to speeches and harangues, to the exhibition and distribution of signs and placards, the exhibition of dramatic performances whether of tragedy, comedy, opera or ballet, the running of races by horses or other animals or vehicles, and the parading, drilling or manoeuvering without a permit. Moreover, here we have proof in addition that a permit has never been refused when applied for on this mall or island *surrounded by heavy traffic* unless it has been pre-empted by someone else. Certainly there is no restriction or attempted restriction of civil liberties disclosed.

The judgment should be affirmed. [See 299 N. Y. 681.]

LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE, FULD and BROMLEY, JJ., concur.

Judgment affirmed.