Jack Rosenberg, J.
Defendant herein was charged and tried for violation of section 6 of article II of the Rules and Regulations of the Department of Parks of the City of New York.
The evidence presented at the trial showed that on July 1, 1965 at about 7:50 p.m. the defendant had distributed mimeographed circulars on the sidewalk adjacent to the entrance to Tompkins Square Park. The circulars, one of which was offered and received in evidence consisted of a rather strongly worded attack on our Federal Government for its military involvement in Viet Nam and in the Dominican Republic. It was signed “ Tompkins Square Neighbors for Peace Action ”. Pictures submitted in evidence and testimony made it clear that the leaflet distribution was peaceful and involved no public turmoil. There is no evidence whatsoever that the distribution made on the sidewalk outside of the park caused any disturbance to those using the park for recreation and rest or in any way interfered with the use of either the park or its adjacent sidewalks for such normal park purposes.
Section 6 of article II of the Rules and Regulations of the Department of Parks of the City of New York, the first sentence of which provides: “No person shall distribute, display, transport, carry, or construct any flag, banner, sign, emblem, model, device, pictorial representation, or other matter within any park or park-street for advertising or political purposes.” Article I (§ 1, subd. c) defines “park-street” as “All street property around the park for the full width thereof.” The authority of the Commissioner to establish the rules and regulations quoted above is established by sections 532 and 534 of the New York City Charter.
It is the contention of the People that when the defendant herein distributed the leaflet described above he violated the ban in section 6 of article II on the distribution of “ other matter” for “political purposes.” Defendant does not question the charge of distribution of political matter but contends that the regulation so applied is a violation of his constitutional *1076 right under the First Amendment to make public distribution of noncommercial handbills on any public thoroughfare.
In People v. Nahman (298 N. Y. 95) and in People v. Hass (299 N. Y. 190, app. dsmd. 338 U. S. 803) our Court of Appeals held, with respect to another section of the Park Department’s Rules and Regulations (art. III, § 21-a), the regulation was constitutional since its sole objective was “ the safety, comfort, and convenience of the people of the city in their appropriate use of its public parks.” But in Commonwealth v. Dubin (327 Mass. 681) the rule governing reservations under control of the metropolitan district provided that no one should post or print any sign, placard or “ other advertising device ”. Defendant in Dubin had posted signs on streets at a public beach reading “ We Want Peace ” and so on. The Massachusetts court, refusing to give the rule a narrow construction, struck down the rule saying (pp. 682-683): “It is not aptly and narrowly phrased to protect the public from annoyance or danger or to protect public property. It does not merely regulate the size or position of signs. It seeks to prohibit altogether in a public place one of the common and normally harmless means of communicating ideas. ’ ’
In another case which involved the use of the streets and parks for the discussion of public issues — and certainly political questions involving war and peace are public issues —the United States Supreme Court has said: “Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.” (Hague v. C. I. O., 307 U. S. 496, 515.) And in Kunz v. New York (340 U. S. 290), Mr. Chief Justice Vinson noted that the court has consistently condemned licensing systems which vest in an administrative official discretion to grant or withhold a permit “ upon broad criteria unrelated to proper regulation of public places ” (p. 294).
Here we have a regulation which goes even further, for, if granted the interpretation sought by the People, it absolutely bans distribution of political leaflets, without any consideration of whether such distribution in any way adversely affects the proper use of the parks or “ the proper regulation of public places.” This is prior restraint upon freedom of press without any showing of interference with the proper park use of the public park involved.
Political discussion is the very lifeblood of our free democracy. Such discussion and its concomitant, distribution of leaflets *1077 dealing with political questions, ought not to he barred from the parks and the streets bordering on them, unless this is shown to be necessary to preserve the safety, comfort and convenience of the people of the city in their appropriate use of its public parks. Here no such showing has been made. Nor has the language of the regulation any such limitation. Hence the regulation fails to comply with the requirements of the First Amendment. (See, also, People v. Hennacy, 308 N. Y. 1039; People v. Barber, 289 N. Y. 378.)
The charge here under consideration is dismissed.