THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* MARY
ELIZABETH RICHARDS, Defendant.

District Court of Nassau County, First District, October 29, 1941.

*Edward J. Neary, District Attorney [Philip Huntington, Assistant District Attorney, of counsel], for the plaintiff.*

*Boudin, Cohn & Glickstein* and *Pinto & Marcantonio [Benjamin Karpay* and *Samuel Cohen* of counsel], for the defendant.

GREASON, J. This defendant is charged, in an information containing five counts, with the following offenses:

(a) A violation of subdivision 2 of section 722 of the Penal Law in that on August 17, 1941, at Jones Beach State Park, in front of bath house No. 2, defendant willfully, wrongfully and unlawfully acted in such a manner as to annoy, disturb, interfere with and obstruct others, in that she did, in company with three other young women, each aiding and abetting one another, march and parade back and forth, carrying signs in substance as follows: " Levine Brothers Operators of Boardwalk Cafe unfair to Brass Rail Strikers Local 16 and 89 of A. F. of L.," and " Levine Brothers, Operators of Marine Bar unfair to Brass Rail Strikers Local 16 and 89 of A. F. of L."

(b) A violation of subdivision 4 of section 722 of the Penal Law in that at the time and place aforementioned, the defendant did willfully and unlawfully cause a crowd to collect, the said acts being a breach of the peace or tending to a breach of the peace.

(c) A violation of section 1 of ordinance 4 of the Long Island State Park ordinances, in that at the time and place aforesaid, defendant unlawfully and willfully displayed certain signs and placards for advertising purposes, in violation of the said ordinance.

(d) In that the defendant, at the time and place and in the manner described heretofore, violated section 8 of ordinance 5 of the Long Island State Park ordinances, in that the said defendant did then and there willfully and unlawfully engage in a parade, in violation of the ordinance.

(e) A violation of section 5 of ordinance 4 of the Long Island State Park ordinances, in that the defendant did willfully and unlawfully disobey the lawful order of a Long Island State Park patrolman.

The following findings of fact are made: That on August 17, 1941, this defendant with three other young girls, was brought to Jones Beach State Park, bath house No. 2, by officials and representatives of Locals 16 and 89 of the Hotel and Restaurant Workers Union. Shortly after arriving there, they discarded their outer clothing and proceeded to parade up and down in front of bath

house No. 2, attired in bathing suits, carrying signs with the following inscriptions: "Levine Brothers Operators of Boardwalk Cafe unfair to Brass Rail Strikers Local 16 and 89 of A. F. of L.," and "Levine Brothers Operators of Marine Bar unfair to Brass Rail Strikers Local 16 and 89 of A. F. of L.;" that the parade and signs attracted the attention, as was intended, of numerous persons enjoying the facilities of Jones Beach, and that at the expiration of about eight minutes, the crowd had increased to a substantial number between 1,000 and 2,000 people; that disorder resulted, following the appearance of the State trooper who instructed the defendant and the other girls parading with her, to stop parading, with large numbers of people running to the scene of the disturbance, climbing on chairs, parapets, rubbish containers, etc.; that following the instructions and orders of the State trooper sergeant, the defendant continued her activities and thereafter was placed under arrest. Following the arrest of the defendant, it took from fifteen to twenty minutes to disperse the crowd that had gathered, during which time some disorder resulted between the employees of the State Park Commission, photographers and persons who had accompanied the defendant to Jones Beach. I find that the People have sustained the burden of proving beyond a reasonable doubt, these facts.

During the trial Commissioner Robert Moses testified at length as an expert in the planning and administration of public parks " that the State policy was for the provision of space for outdoor recreation in the open country, which could not be provided in the crowded cities — on the assumption that people had to get away from cities to repair some of the damage and shock to their nerves caused by city life. For that reason, the State embarked on a policy of acquiring acreage for recreation places, with some reference to scenery — but that was a secondary consideration — and of the construction of highways which would make the new parks accessible; that there is a direct relationship between the maintenance of State parks and public health, particularly in the large metropolitan areas." Mr. Moses further stated that anything that is commercial, noisy or obtrusive, such as amusement concessions — anything that interferes with the quiet and comfort of people who have gone out of the city to escape noise — is sought to be excluded and kept out of the State parks by ordinance, policing and regulations.

Mr. Moses also testified as to the adoption of the ordinances, " as to these ordinances here, and those adopted throughout the State and by other State Park Commissions, they are never entered into hastily — they have all been the subject of legislation and

the courts have interpreted and sustained them." He said that the reasons for their adoption are " that if we did not have an ordinance, people could not enjoy the quiet, rest and recreation for which the parks are designed. The noise interferes with people — advertising from the water — from the land — from the air — all of which have been attempted from time to time by minorities who don't respect the rights of the majority of the people who come for recreation and for the benefit of which majority these ordinances were made." He stated that if unrestricted advertising was permitted in the parks and unrestricted parades, " we could not control the parks; we could not control the people and the purpose for which the parks were created would be defeated." Mr. Moses was asked to state whether these rules and regulations or similar ones have been found necessary generally, in other parks in different parts of the country and he said, " We have been consulted by other bodies representing municipal, town and State parks, and numbers of them have copied our ordinances — because they seek solutions of the problem as successful as the one we find here." Mr. Moses said that if unrestricted parading in the parks were permitted physical damage to the parks would be inevitable.

Mr. Moses further stated that the Jones Beach Catering Corporation, which operated the Marine Bar and the Boardwalk Cafe, did so under the complete supervision and control of the Park Commission; that they were restaurants operated as park facilities as distinguished from being operated as independent commercial enterprises; that the State owns the equipment and the Jones Beach Catering Corporation runs the restaurants at prices fixed by the State, and under conditions fixed by the State; that the Commission has control of Jones Beach and there are no labor troubles and that he could not conceive of a situation where the Commission would tolerate conditions which might be the basis for labor troubles; that he could not conceive of any reason for picketing at Jones Beach because he could not conceive of any local dispute which would not be settled by the State authorities.

It appears further that Levine Brothers, who are officials of the Jones Beach Catering Corporation, are also officials of the Brass Rail, Inc., and that Locals 16 and 89 have been picketing the Brass Rail for a long period. It does further appear, however, that the Jones Beach Catering Corporation does not own any stock in the Brass Rail, Inc., and derives no income whatever from the Brass Rail, Inc.; that the Brass Rail, Inc., does not own any stock in the Jones Beach Catering Corporation and does not derive any income from the Jones Beach Catering Corporation;

that the Jones Beach Catering Corporation does not buy, sell or dispose of any food through the Brass Rail, Inc.

The court finds that there is no labor dispute at Jones Beach.

The court disagrees with the statement of defendant's counsel, and finds as a fact, that no labor dispute exists either as to the Jones Beach Catering Corporation or as to the Jones Beach State Park and the Long Island State Park Commission. The court finds as a fact that there was an attempt to establish an illegal secondary boycott against the Jones Beach restaurants by picketing them with signs relating to a strike affecting solely the Brass Rail and the employees of that concern.

As to the ordinances — there is nothing to indicate that these ordinances are directed against labor — they are not directed against any class or group — they are directed only against certain acts which are obviously against the public interest, and acts which are clearly inconsistent with and destructive of the purpose for which the State parks are established and maintained — namely, the beneficial use and enjoyment of the State parks by the public as a whole.

As to freedom of speech — there is nothing to indicate that the Long Island State Park Commission intended to limit speech generally, nor does it regulate, or attempt to regulate, what a group of people may say to each other, nor does it proscribe, or attempt to proscribe, censor or attempt to censor, what may be said at a public meeting in a park, for which a permit may have been granted. What the ordinances do provide is a prohibition of displays of advertising, a prohibition of parades except by permit, and to require that all persons obey the lawful orders of the State Park officers. Nothing indicates that the State Park Commission by its ordinances has attempted to tamper with the rights of assembly and free speech — it being remembered that these rights are not absolute, but relative — that the rights may be regulated in the interest of all and must be exercised in subordination to the general comfort and convenience and in consonance with peace and good order. (See *Hague* v. *C. I. O.*, 307 U. S. 496; *Davis* v. *Massachusetts*, 167 id. 43.) As Mr. Chief Justice HUGHES said in *Cox* v. *New Hampshire* (312 U. S. 569, 574): " Civil liberties, as guaranteed by the Constitution, imply the existence of an organized society maintaining public order without which liberty itself would be lost in the excesses of unrestrained abuses. The authority of a municipality to impose regulations in order to assure the safety and convenience of the people in the use of public highways has never been regarded as inconsistent with civil liberties but rather as one of the means of safeguarding good order upon

which they ultimately depend. The control of travel on the streets of cities is the most familiar illustration of this recognition of social need. Where a restriction of the use of highways in that relation is designed to promote the public convenience in the interest of all, it cannot be disregarded by the attempted exercise of some civil right which in other circumstances would be entitled to protection. One would not be justified in ignoring the familiar red traffic light because he thought it his religious duty to disobey the municipal command or sought by that means to direct public attention to an announcement of his opinions. As regulation of the use of the streets for parades and processions is a traditional exercise of control by local government, the question in a particular case is whether that control is exerted so as not to deny or unwarrantedly abridge the right of assembly and the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places."

Referring to *Hague* v. *C. I. O.* (*supra*), Chief Justice Hughes said, " the ordinance dealt with the exercise of the right of assembly for the purpose of communicating views; it did not make comfort or convenience in the use of streets the standard of official action but enabled the local official absolutely to refuse a permit on his mere opinion that such refusal would prevent ' riots, disturbances or disorderly assemblage.' The ordinances thus created, as the records disclosed, an instrument of arbitrary suppression of opinions on public questions. The court said that ' uncontrolled official suppression of the privilege cannot be made a substitute for the duty to maintain order in connection with the exercise of the right of free speech.' "

The quotation set forth in 133 American Law Reports (p. 1404) seems particularly applicable here: " There is no legal authority to constrain belief, but no one can lawfully stretch his own liberty of action so as to interfere with that of his neighbors, or violate peace and good order." The court believes that these ordinances are constitutional, and further believes that they are reasonable. They are not class legislation. They are for the preservation of the State parks and for the benefit and protection of the general public, in the public use and enjoyment of the parks.

As the court has stated before, it holds that no labor dispute existed between the locals and the Jones Beach Catering Corporation, or between the locals and the authorities at Jones Beach State Park. The picketing, or attempted picketing, was, therefore, illegal secondary picketing and in and of itself constituted disorderly conduct. It was intended to coerce the Park Commission into taking sides in the Brass Rail controversy — a controversy

in which the State of New York and the Long Island State Park Commission had no interest.

Judge Finch in the dissenting opinion in *People* v. *Muller* (286 N. Y. 281, 290) stated this proposition, " assuming that the right to picket is entitled to no less rights than we give to the right of free speech \* \* \* labor unions, when their actions are unlawful, are not free from the provisions of the Penal Law and where picketing is used to further an unlawful objective, \* \* \* it is subject to reasonable limitation by the courts and Legislature of the State."

Here the State, through the Long Island State Park Commission, is not engaging in a commercial venture or competing with private enterprise in the restaurant business, but is merely furnishing a proper and necessary public facility in a public State park and entirely under public State control through a concessionaire.

The court finds that the picketing was an illegal secondary picketing and that the particular acts committed by the defendant were violations of the law and the ordinances in that the ordinances under consideration related to the use and beneficial enjoyment of the park and were reasonable and not inconsistent with statutes or constitutional provisions.

The court finds the defendant guilty of a violation of subdivision 2 of section 722 of the Penal Law and a violation of subdivision 4 of section 722 of the Penal Law, and of a violation of section 1 of ordinance 4, a violation of section 8 of ordinance 5, and a violation of section 5 of ordinance 4 of the Long Island State Park Ordinances.

On the first count of the information, the sentence of the court is that the defendant serve thirty days in the county jail, execution of the jail sentence being suspended.

On the second count of the information, a violation of subdivision 4 of section 722 of the Penal Law, the defendant is sentenced to serve thirty days in the county jail and execution of the jail sentence is suspended.

On the violation of section 1 of ordinance 4 of the Long Island State Park Ordinances, sentence is suspended.

On the violation of section 8 of ordinance 5 of the Long Island State Park Ordinances, sentence is suspended.

On the violation of section 5 of ordinance 4 of the Long Island State Park Ordinances, sentence is suspended.

In conclusion, the court wishes to thank both the district attorney and the attorney for the defendant for the very able and exhaustive briefs submitted.