JUAN MARÍ BRAS y OTROS, peticionarios y apelados, *v.* ALCAIDE CÁRCEL MUNICIPAL DE SAN JUAN y/o CUALQUIER OTRO ALCAIDE, demandados y apelantes.

*Número*: O-71-17 *Resuelto*: 21 de marzo de 1972

*Gilberto Gierbolini, Procurador General,* y *Peter Ortiz, Procura-dor General Auxiliar,* abogados de los apelantes; *Enrique González,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR MARTÍNEZ MUÑOZ emitió la opinión del Tribunal.

El presente recurso nos ofrece la oportunidad de resolver si la fijación de carteles, que no son de tipo comercial, sobre la superficie de propiedad pública, constituye un delito bajo el inciso 6 del Art. 517 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 2067(6) que dispone lo siguiente:

"Incurrirá en delito menos grave toda persona que voluntaria-mente cometiere cualquiera de las siguientes violaciones:

. . . . . . . . .

6. Poner, pegar, fijar, imprimir, o pintar sobre cualquier propiedad perteneciente al gobierno o municipio, ciudad o pueblo, o consagrada al público, o sobre la propiedad de cualquier per-sona, sin permiso del dueño, cualquier aviso, anuncio, designación

o nombre de cualquier artículo, para ofrecerlo en venta, u otro fin, o cualquier cuadro, letrero o mote, con objeto de llamar la atención hacia el mismo."

Mediante petición de hábeas corpus, los aquí apelados impugnaron ante el Tribunal Superior la legalidad de su arresto, basado en unas denuncias[1] en las que se alegaba que, en violación de dicho artículo, habían pegado—algunos en el Puente Dos Hermanos y otros en ciertos postes del alumbrado público pertenecientes a la Autoridad de Fuentes Fluviales—ciertos pasquines que decían: "LAS PLAYAS PARA EL PUEBLO—Movimiento Pro Independencia."

Oídas las partes en cuanto al primero de cuatro[2] fundamentos de impugnación, a saber: que la denuncia no aducía hechos constitutivos del delito imputado, el Tribunal Superior declaró con lugar el auto solicitado, ordenó la libertad inmediata de los peticionarios y la cancelación de las fianzas prestadas por éstos, por considerar que los hechos alegados no constituyen el delito definido en el Art. 517, inciso 6, del Código Penal. Sostuvo el tribunal a quo:

". . . [e]ntendemos que el Inciso 6 del Art. 517 del Código Penal no prohíbe el que se pongan, peguen, fijen, impriman o pinten sobre cualquier propiedad perteneciente al Gobierno o Municipio, anuncios o cualquier otra literatura no relacionada a artículos de comercio, como en este caso que se trata de pasquines que son de naturaleza política."

---

[1] Las denuncias son similares con excepción del nombre del acusado y los sitios. El texto lee así:

". . . , allí y entonces, ilegal, voluntaria, malicionsamente, a sabiendas y con la intención criminal, en la fecha, hora y sitio arriba indicado se dedicaba a poner o pegar paquines [sic] los cuales se leían la PLAYA PARA EL PUEBLO, en una propiedad pertenenciente a la Autoridad de Fuentes Fluviales, los cuales los pegaban en un poste del Alumbrado Público, sin el permiso de su dueño, o propietario."

[2] Los otros tres fundamentos son: (a) el artículo mencionado es inconstitucional de su faz, ya que viola el derecho a la libre expresión; (b) el artículo se ha aplicado inconstitucionalmente al discriminarse en contra de los independentistas; y (c) la denuncia se radicó a nombre del Pueblo de Puerto Rico, que es una entidad inexistente en derecho.

No conformes con dicha resolución, los demandados (alcaides representados por el Procurador General) apelaron ante nos.

Los demandados, aquí apelantes, no alegan que los carteles aquí envueltos promovieran un interés comercial, ni ponen en duda el que fuesen fijados para fines de difusión política. Su posición es más bien que el Art. 517, inciso 6, del Código Penal incluye como delito la fijación de carteles como los que fueron puestos por los apelados en este caso. Señalan que el tribunal a quo cometió un grave error de enfoque al basar su fallo en la *naturaleza* del contenido del escrito, ignorando el *propósito* general que anima el artículo en cuestión, según se desprende de su título (Transgresión) y del Capítulo del Código Penal en que se encuentra (Daños Maliciosos), de proteger los derechos de propiedad contra sus transgresores, y que ". . . [t]anto daño sufre una propiedad cuando se le fija un pasquín político que cuando se le fija un anuncio comercial; la transgresión es la misma en ambos casos".

Surge de la resolución del tribunal y de las alegaciones de las partes que la controversia gira alrededor de la *interpretación* del Art. 517(6) del Código Penal. A ella nos habremos de limitar al disponer de esta controversia sin dejar de aludir, aunque sea someramente, a ciertos principios en el trasfondo del caso referentes al derecho a la libertad de prensa y libre expresión por un lado, y el interés público del Estado de proteger la propiedad gubernamental contra daños o perturbaciones ajenas por otro.

■ En nuestro país es de conocimiento común el uso generalizado de carteles, mensajes pintados, pasquines, etc., por individuos o grupos como uno de los medios de diseminación de ideas, inquietudes y protestas, sobre toda clase de temas, incluyendo el mensaje y propagación política. Este medio de difusión constituye un ejercicio de las libertades de palabra y prensa.

Generalmente la dificultad en el uso de este mecanismo de expresión surge no del mensaje, idea o exhortación en sí, sino de su fijación física sobre la propiedad bajo la administración o control gubernamental. La perturbación que ello puede ocasionar al uso de la propiedad gubernamental y privada ha motivado que se restrinja o desee restringir este tipo de actividad en muchos estados.

■ El problema específico de la validez constitucional de estatutos y ordenanzas tendentes a proteger la propiedad contra daños o perturbaciones, en vista del derecho a la libre expresión y la libertad de prensa, no ha sido tratado directamente por el Tribunal Supremo de los Estados Unidos. No obstante ese Tribunal y otros federales inferiores y estatales han elaborado una serie de doctrinas sobre la libertad de expresión y prensa en general y sobre el uso de las vías y edificaciones públicas en particular que pueden arrojar luz sobre la controversia aquí planteada en torno a la interpretación del Art. 517, inciso 6, del Código Penal.

En general, una disposición legislativa que tiene como propósito la limitación de la libre expresión se verá sujeta a un examen minucioso (*careful scrutiny*) y será válida sólo si está redactada en términos limitados (*narrowly drawn*) para proteger un interés legítimo e importante del estado (*legitimate and compelling state interest*) ; *Mitchell Family Planning, Inc.* v. *City of Royal Oak*, 40 L.W. 2453 (U.S.D.C. of E. Mich., 5 de enero de 1972)`.` Como consecuencia, sería inválida una prohibición absoluta de libre expresión y aun una restricción que, sin ser absoluta, sea innecesariamente abarcadora. *Martin* v. *City of Struthers*, 319 U.S. 141 (1942). En cuanto a las vías públicas, la Corte Suprema de los Estados Unidos ". . . [h]a sostenido inequívocamente que las calles son lugares apropiados para el ejercicio de la libertad de comunicar información y diseminar opiniones y que, aunque los estados y municipios pueden reglamentar adecuadamente ese privilegio en el interés público, no pueden gravar injustifica-

damente ni prohibir su ejercicio en estas vías públicas."
*Valentine* v. *Crestensen*, 316 U.S. 52, 54 (1941). Se ha re-
suelto que son inconstitucionales ordenanzas que prohíben la
repartición de hojas sueltas en residencias privadas a menos
que se haya obtenido permiso previo del dueño. *Martin* v. *City
of Struthers*, supra; *Van Nuys Publishing Co.* v. *Thousand
Oaks*, 97 Cal. Rptr. 777 (1971); ordenanzas requiriendo una
licencia previa para poder repartir hojas sueltas u otro
material propagandístico, si el oficial a cargo de otorgar las
licencias no tiene su discreción estrictamente limitada de
antemano. *City of Bowling Green* v. *Lodico*, 228 N.E.2d 325
(Corte Suprema de Ohio, 1967); imposición de arbitrios sobre
publicaciones religiosas vendidas sin fines de lucro. *Follet* v.
*McCormick*, 321 U.S. 573 (1944); *Jones* v. *Opelika*, 319 U.S.
105 (1942); y el exigir que toda hoja suelta o publicación
similar tenga impreso el nombre y dirección del que la publica.
*Talley* v. *California*, 362 U.S. 60 (1959).([3])

En *Peltz* v. *City of South Euclid*, 228 N.E.2d 320 (1967),
la Corte Suprema de Ohio declaró inconstitucional una orde-
nanza prohibiendo las carteles con mensajes políticos dentro
de vastas zonas del municipio; y en *Pace* v. *Village of Walton
Hills*, 238 N.E.2d 542 (1968), esa misma corte declaró incons-
titucional un reglamento de zonificación municipal que prohi-
bía carteles políticos en zonas residenciales.

En *Wolin* v. *Port of New York Authority*, 392 F.2d 83, 89
(2d Cir. 1968), *cert. denied*, 393 U.S. 940 (1969), la Corte
de Circuito Federal para el Segundo Circuito sostuvo que el
edificio terminal de autobuses en la Ciudad de Nueva York
era un lugar apropiado para el ejercicio de los derechos de
expresión y libertad de prensa, a pesar de que el propósito

---

([3]) Véase 10 L.P.R.A. sec. 311: "Todo periódico, *magazine*, revista,
hoja suelta u otra publicación que se haga por medio de la prensa, lito-
grafía, grabado o cualquier otro medio mecánico llevará en sitio ostensible
. . . el nombre de la persona, personas o corporación que la publique y
edite."

primario del edificio no era ése, sino la transportación de personas. Sostuvo dicha corte, a la página 89:

"La privacidad y quietud de los residentes puede exigir que los pasillos de los edificios de apartamientos estén aislados de la excitación producida por las exhortaciones volátiles, o la callada solemnidad de la administración de la justicia puede requerir que los pasillos de las cortes se mantengan libres de demostraciones. Pero esa conclusión se basa en la sabiduría y la experiencia, ya que las fricciones creadas por cualquier expresión protegida interferiría sobremanera a otros intereses—y no sólo por el hecho de que tenga techo el edificio. Es más, el foro público puede ser, por tradición, tanto una sala de asambleas techada como una plaza a pleno sol."

En *Brayton* v. *City of Anchorage*, 386 P.2d 832 (1963), se reconoció el derecho del municipio a recobrar, en una acción civil, el costo de remover unos cincuenta carteles políticos que habían sido fijados por el demandado en unos postes del alumbrado pertenecientes a la ciudad. Ante la alegación del derecho a la libre expresión, el Tribunal Supremo de Alaska sostuvo que la ley protege al Estado contra transgresiones a su propiedad reconociéndole el derecho (*common law right*) a ser indemnizado por los daños resultantes.

Y en *People* v. *Richards*, 31 N.Y.S.2d 457 (1941) se sostuvo la constitucionalidad de una ordenanza de la administración de un parque prohibiendo la fijación de carteles en el mismo, porque (1) permite la expresión en otras formas y (2) tiene un fin legítimo: la preservación de la tranquilidad en un lugar destinado al sosiego de los ciudadanos.

Para justificar las restricciones a la libre expresión en las vías públicas se han invocado ciertos intereses del Estado o la comunidad entre los cuales se destacan la privacidad del hogar, *Breard* v. *Alexandria*, 341 U.S. 622 (1950); la tranquilidad en los parques y lugares similares, *People* v. *Richards*, supra; la seguridad del tránsito, *Peltz* v. *City of South Euclid*, supra; el costo al gobierno de remover los anuncios, *Brayton* v. *City of Anchorage*, supra; el peligro que

pueden crear para los trabajadores los carteles en los postes y otros lugares; *Brayton* v. *City of Anchorage,* supra; y la estética de la comunidad, *Cervecería Corona* v. *Srio. Obras Públicas,* 97 D.P.R. 44 (1969). Véase el Informe de la Comisión de Derechos Civiles, *Los derechos de expresión y el uso de las vías públicas en Puerto Rico,* 1971, págs. 23–30, en el cual se ataca la prohibición absoluta de fijar carteles, sin implicar que el Estado renuncie a la reglamentación razonable, reconociéndose las diferencias que existen entre los distintos lugares y objetos públicos en que se pueden colocar pasquines, ya que hay objetos en que el valor estético o simbólico es máximo (una estatua) y otros en que es mínimo (un poste).

 Es innecesario que resolvamos si el Art. 517 del Código Penal atenta inconstitucionalmente contra el derecho de los apelados a la libre expresión y la libertad de prensa. No es necesario hacerlo toda vez la controversia, según se planteó y resolvió por el tribunal a quo, gira sólo alrededor de la interpretación de dicho artículo. Basta señalar que el artículo alegadamente infringido tiende a restringir ese derecho y que, por tratarse de derechos fundamentales de los apelados, cualquier reglamentación de los mismos debe interpretarse restrictivamente. *Pueblo* v. *Padilla,* 20 D.P.R. 276, 280 (1914). En esa forma seguimos la conocida norma ". . . [d]e que los tribunales no deben abordar plantamientos de índole constitucional cuando se puede disponer del caso en armonía con los intereses del apelante y en consonancia con los mejores fines de la justicia." *Pueblo ex rel M.G.G.,* 99 D.P.R. 925, 927 (1971).

Como se sabe, el Art. 517 del Código Penal proviene y es una traducción del Art. 602 del Código Penal de California, inciso (f) que lee así: (⁴)

*"Trespasses constituting misdemeanor; enumeration.*
Every person who willfully commits any trespass by either:

---

(⁴) West's *Annotated California Codes,* 1970 edition, Vol. 49; *Penal Code,* pág. 646.

(f) . . . or putting up, affixing, fastening, printing, or painting upon any property belonging to the state, or to any city, county, town, or village, or dedicated to the public, or upon any property of any person, without license from the owner, any notice, advertisement, or designation of, or any name for any commodity, whether for sale or otherwise, or any picture, sign, or device intended to call attention thereto;

is guilty of a misdemeanor."

Los apelados sostienen que estamos frente a una traducción defectuosa del texto inglés del estatuto de origen, y que es éste el que debe prevalecer sobre el texto castellano. *Pueblo* v. *Fonseca,* 62 D.P.R. 433 (1943).([5])

■ El tribunal sentenciador, al comparar ambos textos, concluyó que la palabra "artículo" de nuestro Código Penal corresponde a *commodity* en inglés, y que la frase "u otro fin" (*or otherwise*) se relaciona con la venta de un "artículo" (*commodity*) y no a mensajes u otra literatura no relacionada a artículos de comercio. Estamos de acuerdo.

De acuerdo con Black's *Law Dictionary* (4ta. Edición Revisada, 1968) la palabra *"commodity"* se define de la siguiente manera:

"In the most comprehensive sense, convenience, accommodation, profit, benefit, advantage, interest, commodiousness.

In the commercial sense, any movable or tangible thing that is produced or used as the subject of barter or sale."

En la misma fuente (pág. 342) se dice que *"commodities"* significa:

"Those things which are useful or serviceable, particularly articles of merchandise movable in trade . . . . [Citas]

Goods, wares, and merchandise of any kind; movables; articles of trade or commerce. [Citas]"

---

([5]) Art. 13 del Código Civil, 31 L.P.R.A. sec. 13; *Pueblo* v. *Zayas,* 72 D.P.R. 18 (1951); *Pueblo* v. *Tirado,* 68 D.P.R. 289 (1948).

■ La otra frase "u otro fin" corresponde a la. palabra *"or otherwise"* en el texto inglés. ¿Cuál es su alcance? En *Pueblo* v. *Benítez et al.*, 19 D.P.R. 246, 255 (1913) utilizamos la norma de interpretación conocida como *noscitur a sociis* que nos indica que ". . . [c]uando en un estatuto las palabras de determinada significación van seguidas de otras palabras de sentido general que no son tan específicas y limitadas, la palabra o palabras generales deberán ser interpretadas en el sentido de que son aplicables a las personas o cosas de igual clase, según se designan las mismas en la determinada palabra o palabras, a menos que aparezca que la intención ha sido distinta." Véanse Black's *Law Dictionary*, 4ta. Edición Revisada, pág. 1209; *Meléndez* v. *Tribunal Superior*, 90 D.P.R. 656, 667 (1964).

Esta regla es de aplicación en el presente. Resolvemos, por tanto, que la frase "u otro fin" utilizada en el estatuto se relaciona con "artículos" ·(*"commodities"*) y no a mensajes u otra literatura no relacionada a artículos de comercio.

Los demandados-apelantes llaman la atención a que del propio texto surge que la referencia o ofrecer "en venta u otro fin", se refiere solamente a la "designación" o nombre de cualquier artículo, y no a todo tipo de anuncio, ya que a la frase "cualquier artículo, para ofrecerlo en venta u otro fin" le sigue de inmediato otra frase que dice ". . . o cualquier cuadro, letrero o mote, con objeto de llamar la atención hacia el mismo." Descansan en que la palabra "o" se define como "una conjunción disyuntiva que denota diferencia, separación o alternativa entre dos o más personas, cosas o ideas.", según el Diccionario de la Real Academia, 19na. Ed., pág. 930. Por lo tanto, el uso de dicha conjunción entre las dos frases indica que, si bien la primera se refiere a la venta de un artículo, la segunda frase no está restringida a tales propósitos, sino que tiene un sentido general e independiente del de la primera. Así que esa segunda frase, por lo menos, abarca el tipo de aviso fijado por los apelados.

Los apelados sostienen que la última frase del inciso en cuestión ("o cualquier cuadro, letrero o mote con objeto de llamar la atención hacia el mismo."), cuando dice "el mismo", se refiere al "artículo" que poco antes se había dicho que se penalizaba "el ofrecerlo en venta u otro fin. . . ." Por lo tanto, esta última frase del inciso también gira en torno al artículo de mercancía y no se aplica a otros tipos de anuncio.

No hemos encontrado jurisprudencia alguna en Puerto Rico que ofrezca una interpretación del inciso 6 del Art. 517. En California sólo aparece un caso, no reportado, citado en el alegato de los apelados, de una corte inferior de California. ("Appelate Department of the Superior Court of California for the County of Los Angeles"). Se trata del caso *People of the State of California* v. *John Richard Haag*, Superior Court No. CR.A. 8985, decidido en 15 de abril de 1970, el que envolvía una situación casi idéntica a la de autos.

En ese caso se denunció a Haag por infracción al Art. 602 (f) del Código Penal de California, equivalente al Art. 517, inciso 6, del nuestro, por haber colocado varios carteles en ciertos postes del alumbrado público, en cuyos carteles se instaba al público a reunirse en asamblea para organizar la oposición al "Plan Maestro" que para el área de Venice tenía el Municipio de Los Angeles. Un segundo cargo fue incluido en la denuncia imputándole violación a un ordenanza municipal de Los Angeles que penalizaba el fijar *cualquier* letrero en un poste del alumbrado público (Código Municipal de Los Angeles, sec. 28.04: "no person shall . . . post or otherwise affix, any hand-bill or sign to or upon any . . . electric light or power . . . post . . ."). La corte de primera instancia determinó culpabilidad por ambos cargos.

En apelación, se revocó la condena bajo el primer cargo porque el inciso (f) del Art. 602 del Código Penal se refería a anuncios de tipo *comercial* y no a los anuncios *políticos*, como lo eran los carteles colocados por el apelante. Esta interpretación se fundamentó en el uso de la palabra *commodity*

en la forma ya indicada. (6) Por otra parte, se sostuvo que el apelante había infringido la ordenanza, objeto del segundo cargo, ya que ésta se expresa en términos generales y no se restringe a anuncios comerciales. En cuanto a este último cargo, el caso fue devuelto al tribunal de origen para un nuevo juicio por ciertos defectos procesales.

En la forma en que está redactado el Art. 517, inciso (6), no creemos que se corre gran riesgo en afirmar que está sujeto a legítimas dudas sobre las actividades que trata de penalizar. Estamos frente a un estatuto penal. La duda que surge debe resolverse a favor del acusado y de su inmunidad, pero nunca para alcanzar situaciones que no aparecen claramente contempladas por la ley. Esa es la norma básica que hemos seguido en otras ocasiones. *Pueblo* v. *Benítez et al.* supra, pág. 258:

". . . [A]demás, el estatuto que se considera es uno penal y criminal y como tal debe ser estrictamente interpretado. [Citas] Deben dichos estatutos ser estrictamente interpretados, o sea, de modo estricto en aquellas partes que están en contra del acusado pero liberalmente en las que le favorecen. Ninguna persona quedará sometida a dichos estatutos por meras deducciones, y cuando surgen dudas con respecto a su intervención, tales dudas deberán considerarse únicamente a favor del acusado."

*La resolución apelada será confirmada.*

El Juez Presidente, Señor Negrón Fernández, no intervino y el Juez Asociado, Señor Torres Rigual, concurre con el resultado.

---

(6) Sostuvo dicha corte: "We feel that a reading of Subdivision (f) of Section 602 of the Penal Code clearly indicates that said section applies only to notices or advertisements of commodities, i.e., commercial notices. Defendant's activities do not fall in this category. He was improperly convicted of violating this section. Said conviction is reversed and upon remand, Count I must be dismissed."