JUAN MARI BRAS ET AL., Petitioners and Appellees, *v.* WARDEN OF THE MUNICIPAL JAIL OF SAN JUAN, and/or ANY OTHER WARDEN, Respondents and Appellants.

No. O-71-17.     Decided March 21, 1972.

*Gilberto Gierbolini, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for appellants. *Enrique González* for appellees.

MR. JUSTICE MARTÍNEZ MUÑOZ delivered the opinion of the Court.

█ The present appeal gives us the opportunity to decide whether the affixing of posters, which are not of a commercial nature, up on the surface of public property, constitutes an offense under subd. 6 of § 517 of the Penal Code of Puerto Rico, 33 L.P.R.A. § 2067(6), which provides the following:

"Every person who wilfully commits any trespass by either:

.  .  .  .  .  .  .  .

"6. Putting up, affixing, fastening, printing, or painting upon any property belonging to the government or municipality, city, village, or dedicated to the public, or upon any property of any person, without license from the owner, any notice, advertisement, or designation of, or any name for any commodity, whether for sale or otherwise, of█ any picture, sign, or device intended to call attention thereto, is guilty of [a] misdemeanor."

Appellees herein, through a petition for habeas corpus, challenged before the Superior Court the legality of their arrest based on some informations[1] where it was alleged that, in violation of said section, they had pasted some posters— some under Dos Hermanos Bridge and others on some utility poles belonging to the Water Resources Authority—which read: "LAS PLAYAS PARA EL PUEBLO—*Movimiento Pro Independencia*" (The Beaches for the People—Movement for Independence).

---

[1] The informations are similar, except for the name of the defendant and the places. The text reads thus:

". . . there and then, illegally, willfully, maliciously, knowingly, and with criminal intent, on the date, time, and place set forth above, was engaged in putting up or affixing posters which read LA PLAYA PARA EL PUEBLO (The Beach for the People), on a property belonging to the Water Resources Authority, posters which were being affixed on a utility pole of the Public Lighting System without authorization from its owner, or proprietor."

The parties having been heard in regard to the first of the four[2] grounds on which the challenge was based, to wit: that the information did not state facts constituting the offense charged, the Superior Court granted the writ requested, ordered the immediate release of the petitioners and the cancellation of the bail bonds posted by the latter, because it considered that the facts alleged do not constitute the offense defined in § 517, subd. 6, of the Penal Code. The trial court held:

". . . we understand that Subd. 6 of § 517 of the Penal Code does not prohibit the putting up, affixing, fastening, printing, or painting, upon any property belonging to the Government or Municipality, advertisements or any other literature not connected with commodities, as in the instant case, which deals with posters which are of a political nature."

Feeling aggrieved by said order, the respondents (wardens represented by the Solicitor General) appealed to this Court.

Respondents, appellants herein, do not allege that the posters herein involved promoted a commercial interest, nor do they question the fact that they were affixed for purposes of political propaganda. Their position is rather that § 517, subd. 6 of the Penal Code, includes as an offense the affixing of posters as those that were posted by appellees in the instant case. They assign that the trial court committed a gross error in the method of approach by grounding its judgment on the *nature* of the contents of the writing, ignoring the general *purpose* which inspires the section in question, as it is inferred from its title (Trespass) and from the Chapter of the Penal Code where it is found (Malicious Mischief), of

---

[2] The other three grounds are: (a) the aforementioned section is unconstitutional on its face, since it constitutes a violation of the freedom of expression; (b) the section has been unconstitutionally applied in discriminating against those favoring independence, and (c) the information was filed in the name of The People of Puerto Rico, which is a nonexistent entity at law.

protecting the property rights against its transgressors, and that ". . . a property suffers as much damage when a political poster, as well as when a commercial advertisement, is affixed upon it; the trespass is the same in both cases."

From the order of the court and from the allegations of the parties it appears that the controversy centers on the *construction* of § 517(6) of the Penal Code. In disposing of this controversy we shall restrict ourselves to said construction, not without referring, even though slightly, to certain principles in the background of the case concerning the right to freedom of the press and freedom of expression on the one hand, and the State's public interest of protecting governmental property against damages or against extraneous trespasses on the other.

■ In our country, the widespread use of signs, painted messages, posters, etc., by individuals or groups as a means of dissemination of ideas, concerns, and discontent on all kinds of subjects, including the political message and propaganda, is of common knowledge. This means of diffusion constitutes an exercise of the freedom of speech and of the press.

Generally speaking the difficulty in the use of this mechanism of expression arises not from the message, idea, or exhortation in itself, but from the physical affixing thereof on property under governmental administration or control. The disturbance which it may cause on the use of governmental or private property has given rise to the restriction or wish to restrict this type of activity in many states.

■ The Supreme Court of the United States has not directly dealt with the specific problem of the constitutional validity of statutes and ordinances tending to protect the property against damages or trespassing, in view of the right of the freedom of expression and of the freedom of the press. However, that Court and several other inferior federal and state courts have elaborated a series of doctrines concern-

ing the freedom of expression and of the press in general, and concerning the use of thoroughfares and public buildings in particular which may shed light on the controversy raised herein concerning the construction of § 517, subd. 6 of the Penal Code.

In general, a legislative provision which has as its purpose the limitations of speech is subject to careful scrutiny and is valid only when narrowly drawn to protect a legitimate and compelling state interest; *Mitchell Family Planning, Inc.* v. *City of Royal Oak*, 40 L.W. 2453 (U.S.D.C. of E. Mich., January 5, 1972). Consequently, an absolute prohibition of the freedom of expression and even a restriction which, without being absolute, is unnecessarily embracing, would be invalid. *Martin* v. *City of Struthers*, 319 U.S. 141 (1942). In regard to thoroughfares, the Supreme Court of the United States ". . . has unequivocally held that the streets are proper places for the exercise of the freedom of communicating information and disseminating opinion and that, though the states and municipalities may appropriately regulate the privilege in the public interest, they may not unduly burden or proscribe its employment in these public thoroughfares." *Valentine* v. *Chrestensen*, 316 U.S. 52, 54 (1941). It has been held that ordinances which prohibit the distribution of leaflets in private residences are unconstitutional unless a previous permission has been obtained from the owner. *Martin* v. *City of Struthers, supra; Van Nuys Publishing Co.* v. *Thousand Oaks*, 97 Cal. Rptr. 777 (1971); ordinances requiring a previous license in order to distribute leaflets or any other propagandistic material, if the licensing official has been granted unfettered discretion beforehand; *City of Bowling Green* v. *Lodico*, 228 N.E.2d 325 (Supreme Court of Ohio, 1967); imposition of taxes on religious publications sold without profit. *Follet* v. *McCormick*, 321 U.S. 573 (1944); *Jones* v. *Opelika*, 319 U.S. 105 (1942); and to require that every handbill or similar publication shall have printed on it the

name and address of the publisher. *Talley* v. *California*, 362 U.S. 60 (1959).[3]

In *Peltz* v. *City of South Euclid*, 228 N.E.2d 320 (1967), the Supreme Court of Ohio held that an ordinance prohibiting political signs within vast zones of the municipality was unconstitutional; and in *Pace* v. *Village of Walton Hills*, 238 N.E.2d 542 (1968), that same court held that a municipal zoning regulation which prohibited political posters in residential zones was unconstitutional.

In *Wolin* v. *Port of New York Authority*, 392 F.2d 83, 89 (2d Cir. 1968), cert. denied, 393 U.S. 940 (1969), the Federal Court for the Second Circuit held that the bus terminal building in the City of New York was an appropriate place for exercising the rights of expression and of liberty of the press, despite the fact that that was not the original purpose of the building, but rather, the transportation of persons. Said court held at p. 89:

> "The privacy and solitude of residents may require that apartment house hallways be insulated from the excitement of volatile exhortations, or the quiet dignity of judicial administration may dictate that courthouse passages be kept free of demonstration. But that is a result based on wisdom and experience because the abrasions caused by any protected speech would too greatly interfere with other interests—and not simply because there is a covering on the building. Indeed, the public forum is surely as traditionally a covered meeting hall as a sunlit arena."

In *Brayton* v. *City of Anchorage*, 386 P.2d 832 (1963), the right of the municipality to recover, in a civil action, the cost of removing some fifty political posters which had been attached by the defendant to some utility poles belonging to

---

[3] See 10 L.P.R.A. § 311: "Each and every newspaper, magazine, periodical, hand-bill or other publication, either printed, lithographed, engraved or turned out by any other mechanical means, shall show in a conspicuous place . . . the name of the person, persons or corporation publishing and editing the same."

the city was acknowledged. In view of the argument of the right of the freedom of expression, the Supreme Court of Alaska held that the law protects the State against trespass of its property acknowledging its common law right to be indemnified for the resulting damages.

In *People* v. *Richards*, 31 N.Y.S.2d 457 (1941), the constitutionality of an ordinance of the administration of a certain park prohibiting the affixing of signs in the same was upheld because (1) it permits expression in other forms, and (2) it has a legitimate purpose: to preserve the peace and order of a place destined to the citizens' rest and recreation.

In order to justify the restrictions of the freedom of expression in public thoroughfares, certain interests of the community have been invoked, among which the privacy of the home stands out, *Breard* v. *Alexandria*, 341 U.S. 622 (1950); the peace and order of the parks and similar places, *People* v. *Richards, supra;* traffic safety, *Peltz* v. *City of South Euclid, supra;* the cost to the government for removing advertisements, *Brayton* v. *City of Anchorage, supra;* the danger which the posters on the utility poles and other places may create for the workmen, *Brayton* v. *City of Anchorage, supra;* and the community aesthetics, *Cervecería Corona, Inc.* v. *Secretary of Public Works*, 97 P.R.R. 43 (1969). See the Report of the Civil Rights Commission, *Los derechos de expresión y el uso de las vías públicas en Puerto Rico* 23–30 (1971), where the absolute prohibition to affix posters is attacked, without implying that the State waives a reasonable regulation, recognizing the differences that exist between the different public places and objects where posters may be placed, since there are objects where the aesthetic or symbolic value is maximum (a statue) and others where it is minimum (a pole).

We need not decide whether § 517 of the Penal Code unconstitutionally attempts against appellees' right to the freedom of expression and freedom of the press. It is not

necessary to do it, since the controversy, as it was raised and decided by the trial court, centers only on the construction of said section. It suffices to point out that the section allegedly violated tends to restrict that right and that, since appellees' fundamental rights are involved, any regulation of the same should be construed in a restrictive manner. *The People* v. *Padilla*, 20 P.R.R. 262, 266 (1914). Thus, we follow the well-known rule to the effect ". . . that courts should not consider contentions of a constitutional nature, when the case can be disposed of in harmony with appellant's interests and in consonance with the best ends of justice . . . ." *People ex rel. M.G.G.*, 99 P.R.R. 898, 900 (1971).

As it is known, § 517 of the Penal Code derives from and is a translation of § 602 of the California Penal Code, subd. (f), which reads thus:[4]

*"Trespasses constituting misdemeanor; enumeration*
"Every person who willfully commits any trespass by either:
".     .     .     .     .     .     .     .

"(f) . . . or putting up, affixing, fastening, printing, or painting upon any property belonging to the state, or to any city, county, town, or village, or dedicated to the public, or upon any property of any person, without license from the owner, any notice, advertisement, or designation of, or any name for any commodity, whether for sale or otherwise, or any picture, sign, or device intended to call attention thereto;
".     .     .     .     .     .     .     .

is guilty of a misdemeanor."

Appellees maintain that we are before a defective translation of the English text of the original statute, and that the latter should prevail over the Spanish text. *People* v. *Fonseca*, 62 P.R.R. 413 (1943).[5]

■ In comparing both texts, the trial court concluded

---

[4] 49 West's Annotated California Codes, 1970 edition; Penal Code, p. 646.

[5] Section 13 of the Civil Code, 31 L.P.R.A. § 13; *People* v. *Zayas*, 72 P.R.R. 17 (1951); *People* v. *Tirado*, 68 P.R.R. 270 (1948).

that the word *"artículo"* of our Penal Code corresponds to "commodity" in English, and that the phrase *"u otro fin"* (or otherwise) is related to the sale of a "commodity" (*"artículo"*), and not to messages or other literature not connected with commercial commodities. We agree.

According to Black's Law Dictionary (4th Revised Edition, 1968), the word "commodity" is defined in the following manner:

"In the most comprehensive sense, convenience, accommodation, profit, benefit, advantage, interest, commodiousness.

"In the commercial sense, any movable or tangible thing that is produced or used as the subject of barter or sale."

In the same source (at p. 342) it is said that "commodities" mean:

"Those things which are useful or serviceable, particularly articles of merchandise movable in trade." (Citations)

"Goods, wares, and merchandise of any kind; movables; articles of trade or commerce." (Citations)

■ The other phrase *"u otro fin"* corresponds to the phrase "or otherwise" in the English text. Which is its scope? In *The People* v. *Benítez*, 19 P.R.R. 235, 242 (1913), we used the rule of construction known as *noscitur a sociis* which tells us that ". . . where words of particular description in a statute are followed by general words that are not so specific and limited, unless there be a clear manifestation of a contrary purpose, the general word or words are to be construed as applicable to persons or things of like kind, as are designated by the particular word or words." See Black's Law Dictionary 1209, 4th Revised Edition; *Meléndez* v. *Superior Court*, 90 P.R.R. 639, 649 (1964).

This rule is applicable at the present time. We hold, therefore, that the phrase "or otherwise" used in the statute refers to "commodities" and not to messages or other literature not connected with commercial commodities.

Respondents-appellants call the attention to the fact that from the text itself it arises that the reference to offer "for sale or otherwise" (*ofrecer "en venta u otro fin"*) refers only to the "designation" (*designación*) or name of any commodity, and not to all types of advertisement, since the phrase "any commodity, whether for sale or otherwise" (*cualquier artículo, para ofrecerlo en venta u otro fin*) is immediately followed by another phrase which says ". . . of▇ any picture, sign, or device intended to call attention thereto" (*. . . o cualquier cuadro, letrero o mote, con objeto de llamar la atención hacia el mismo*). They rely on the fact that the conjunction "o" (or) is defined as "a disjunctive conjunction which denotes difference, separation or alternative between two or more persons, things or ideas," according to the *Diccionario de la Real Academia* 930, 19th ed. Therefore, the use of said conjunction between both phrases shows that, although the first phrase refers to the sale of a commodity, the second phrase is not restricted to such purposes, but rather, that it has a general and independent sense from that of the first phrase. Thus, that second phrase, at least, comprises the type of notice fixed by appellees.

Appellees allege that the last phrase of the subdivision in question ("of▇ any picture, sign, or device, intended to call attention thereto"), when it says "thereto" it refers to the "commodity" which thereinbefore it is penalized when "whether for sale or otherwise." Therefore, this last phrase of the subdivision centers also on the commodity and it does not apply to other types of advertisement.

We have not found any case law whatsoever in Puerto Rico offering a construction of subd. 6 of § 517. In California, there appears only one unreported case, cited in appellees' brief, from a lower court of California. (Appellate Department of the Superior Court of California for the County of

Los Angeles.) The case in question is *People of the State of California* v. *John Richard Haag*, Superior Court No. Cr. A. 8985, decided April 15, 1970, which involved a situation almost identical to that of the case at bar.

In that case Haag was arrested for a violation of § 602(f) of the California Penal Code, equivalent to § 517, subd. 6 of our Penal Code, for having affixed several posters on some utility poles, in which posters the public was urged to gather at a community assembly for the purpose of organizing opposition to the city of Los Angeles "Master Plan" for the Venice area. A second charge was included in the accusation, charging him with the violation of a Los Angeles municipal ordinance, which penalized the posting of *any* sign on a utility pole (Los Angeles Municipal Code, § 28.04: "no person shall . . . post or otherwise affix, any hand-bill or sign to or upon any . . . electric light or power . . . pole . . ."). The trial court found defendant guilty on both counts.

On appeal, the conviction under the first count was reversed because subd. (f) of § 602 of the Penal Code referred to notices of a *commercial* nature and not to *political* notices, as were the posters affixed by appellant. This construction was grounded on the use of the word *commodity*, in the aforesaid manner.[6] On the other hand, it was held that appellant had violated the ordinance, object of the second count, since the same is expressed in general terms and it is not restricted to commercial notices. In regard to the last charge, the case was remanded to the trial court for a new trial, because of certain procedural defects.

■ In the manner in which § 517, subd. 6, is drafted, we do not think that there is a great risk in affirming that it

---

[6] Said court held: "We feel that a reading of Subdivision (f) of Section 602 of the Penal Code clearly indicates that said section applies only to notices or advertisements of commodities, *i.e.*, commercial notices. Defendant's activities do not fall in this category. He was improperly convicted of violating this section. Said conviction is reversed and upon remand, Count I must be dismissed."

is subject to reasonable doubt concerning the activities which it seeks to penalize. We are considering a penal statute. Any doubt which may arise should be solved in favor of the defendant and of his immunity, but never to reach situations which are not clearly contemplated by the law. That is the basic rule which we have followed on other occasions. *The People* v. *Benítez, supra* at p. 245:

". . . Moreover, the statute being considered is a penal and criminal one, and as such is to be strictly construed. [Citations] Such statutes are to be strictly construed—that is, construed strictly in those parts which are against defendants, but liberally construed in those which are in their favor; that is, for their ease or exemption. No person is to be made subject to such statutes by implication; and, when doubts arise concerning their interposition, such doubts are to weigh only in favor of the accused."

The order appealed from will be affirmed.

Mr. Chief Justice Negrón Fernández took no part in this decision and Mr. Justice Torres Rigual concurs in the result.

