Córdova Arone, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El 16 de agosto de 1996 el Laboratorio Clínico Aquarium ("Aquarium") presentó ante nos una petición de certiorari, solicitando la revisión de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón el 20 de junio de 1996. Mediante dicho dictamen se revoca una resolución emitida por el Departamento de Salud ("el Departamento ") que otorgó a Aquarium un Certificado de Necesidad y Conveniencia (CNC) para establecer un laboratorio clínico.
*1183 En su recurso de certiorari Aquarium imputa al tribunal recurrido haber cometido los siguientes errores:

"1. Erró la Ilustrada Sala Sentenciadora [sic] al revocar el CNC expedido al Laboratorio Aquarium a base de una interpretación incorrecta de los correspondientes criterios específicos para laboratorios del Reglamento 56 del Departamento de Salud.

2. Erró la Ilustrada Sala Sentenciadora [sic] al revocar el CNC expedido al Laboratorio Aquarium porque éste fuera a afectar adversamente a otros laboratorios de Toa Alta.

3. Erró la Ilustrada Sala Sentenciadora [sic] al revocar el CNC expedido al Laboratorio Aquarium por interpretar incorrectamente el estudio de viabilidad sometido al Departamento de Salud por la parte proponente de dicho laboratorio."

Fijadas las posiciones de las partes y examinados cuidadosamente sus escritos, la jurisprudencia y las leyes aplicables, expedimos el auto de certiorari solicitado y revocamos la sentencia del foro recurrido por los fundamentos expuestos a continuación.
I
El 7 de diciembre de 1994 la Leda. Annie Ortiz Figueroa, Tecnóloga Médica, solicitó ante la Secretaría Auxiliar de Reglamentación y Acreditación de Facilidades de Salud un CNC para establecer un laboratorio clínico que llevaría por nombre Laboratorio Clínico Aquarium. Dicho laboratorio estaría ubicado en el Centro Comercial Terraza Malí en la intersección de las Carreteras Núm. 165 y 159 en el Municipio de Toa Alta, cerca de los Municipios de Naranjito y Corozal.
Celebrada la correspondiente vista administrativa y escuchados los argumentos de Aquarium así como los de los representantes de los opositores a la expedición del CNC, los laboratorios clínicos Toa Alta, Central y San Fernando ("los Opositores"), la Oficial Examinadora, Sa. Jeannette Arias ("la Oficial Examinadora"), rindió un informe recomendando la concesión del CNC. La Hon. Secretaria de Salud, Carmen Feliciano de Melecio ("la Secretaria"), acogió el referido informe y el 15 de diciembre de 1995 emitió una resolución otorgando a Aquarium el CNC solicitado.
No conformes, los Opositores solicitaron la reconsideración del dictamen de la Secretaria. No habiendo actuado sobre la reconsideración dentro del término dispuesto para ello, los Opositores presentaron su solicitud de revisión judicial ante el Tribunal de Primera Instancia solicitando la revocación de la referida resolución.
Luego de varios trámites procesales el tribunal recurrido dictó sentencia el 17 de junio de 1996 revocando la resolución de la Secretaria.
Inconforme con dicho dictamen, Aquarium acude ante nos, solicitando que resolvamos si el hecho de que un municipio esté saturado impide la expedición de un CNC para establecer un laboratorio clínico en un área de servicios no saturada. Resolvemos en la negativa.
II
En su primer señalamiento de error Aquarium alega que el tribunal a quo erró al revocar el CNC concedido basándose en una interpretación incorrecta del Reglamento Núm. 56 del Departamento.
Dado que los Opositores impugnan la interpretación hecha por el tribunal recurrido del Reglamento Núm. 56 de 15 de agosto de 1986 (el "Reglamento"), resulta apropiado examinar *1184 el alcance de nuestra función revisora.
La Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. see 2175, conocida como Ley de Procedimiento Administrativo Uniforme, en su sección 4.5 establece el alcance de la revisión judicial de las conclusiones de derecho de las agencias administrativas al disponer que:

"El tribunal podrá conceder el remedio apropiado si determina que el peticionario tiene derecho a un remedio.

Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.

Las conclusiones de derecho serán revis ables en todos sus aspectos por el tribunal." (Enfasis nuestro.)
Si bien sobre cuestiones de derecho los tribunales deben ejercitar su criterio independiente, las interpretaciones de las agencias administrativas merecen gran consideración y respeto. Colonos de Santa Juanita v. Junta Azucarera, 77 D.P.R. 392, 396 (1954); González Padín Co., Inc. v. J.R.T., 103 D.P.R. 302 (1975). No obstante, las interpretaciones que los organismos administrativos hagan de sus propios reglamentos merecen la deferencia de los tribunales. Srio. D.A.C.O. v. J. Condominos Martí, 121 D.P.R. 807, 819-820 (1989); A.R.P.E. v. Ozores Pérez, 116 D.P.R. 816, 821 (1986).
Aclarado este extremo, veamos los requisitos de ley y reglamento aplicables al caso de autos.
La Ley Núm. 2 de 7 de noviembre de 1975 ("la Ley Núm. 2"), según enmendada, 24 L.P.R.A. see. 334 et seq., regula la expedición de los CNC.
A tenor con las guías y parámetros establecidos en el Art. 3 de la Ley Núm. 2, supra, el Secretario de Salud adoptó el Reglamento Núm. 56, supra, para evaluar las solicitudes de CNC. El Reglamento establece los criterios o guías que serán considerados al atender cualquier solicitud. Dichos criterios están contenidos en los Artículos V y VI del Reglamento. El Artículo V establece los criterios generales y el Artículo VI los específicos.
El Art. VI (15) del Reglamento establece los criterios específicos que debe cumplir el solicitante de un CNC para operar un laboratorio clínico, a saber:

"1. La relación de población por laboratorio clínico estará determinada por el grupo al cual pertenece el municipio del laboratorio propuesto como sigue:

Categoría I -14,000 habitantes por laboratorio

Categoría II -12,000 habitantes por laboratorio

Categoría III -12,000 habitantes por laboratorio

2. La ubicación se evaluará a base del área de servicios dentro del radio de una (1) milla del laboratorio propuesto. Se considerará saturada un área de servicio o un municipio si se sobrepasa el criterio de población aplicable. Disponiéndose que no se denegará el establecimiento de un laboratorio en un área de servicios por la saturación de otras áreas de servicio dentro del mismo municipio. Se podrá tomar en cuenta la densidad poblacional del área, la población transitoria que tiene, si alguna, y las vías de acceso para llegar a la facilidad propuesta."

*1185 Reglamento Núm. 56 Artículo VI (15).
Los Opositores alegan que los incisos 1 y 2 del Artículo VI (15) son distintos y separados y que establecen criterios de saturación diferentes. Por lo cual, al evaluar una solicitud de un CNC, la Secretaria viene obligada a considerar primero si el municipio está saturado y luego si el área de servicio lo está. Alegan, además, que para determinar la saturación de un municipio se utiliza, sólo.el número de.residentes .habituales, mientras que para las áreas de servicio se pueden considerar los factores población flotante o transitoria, la densidad poblacional del área de servicio y las vías de acceso disponibles. Finalmente, señalan que la única forma razonable de armonizar ambos criterios es concluir que cuando un municipio esté saturado no podrán otorgarse más CNC, mientras que cuando el municipio no esté saturado el factor a considerar será si el área de servicio lo está. No nos convence el argumento de los Opositores.
La interpretación propuesta por los Opositores además de ser incorrecta, contraviene la intención del legislador de que los servicios de salud se presten en aquellos lugares donde son necesarios. 24 L.P.R.A. see. 334 (e)(supl).
Conviene señalar que en cuanto a la interpretación de normas los tribunales tienen la obligación de armonizar, hasta donde sea posible, todas las disposiciones de ley con miras a lograr un resultado sensato, lógico y razonable que represente la intención del legislador. Colegio de Ingenieros, v. A.A.A., _ D.P.R. _ (1992), 92 J.T.S. 137, a la pág. 10017.
En su Exposición de Motivos, la Ley Núm. 2 expresa que:

"La planificación ordenada de las facilidades y servicios de salud es indispensable para atender adecuadamente las necesidades de salud de población, controlar los costos de los servicios de salud y velar porque éstos se presten en aquellos núcleos poblacionales donde sean necesarios."

Leyes de Puerto Rico de 1983, pág. 402.
Para lograr la planificación ordenada de las facilidades de salud a que la ley aspira es necesario que el solicitante demuestre al Departamento que existe una necesidad y conveniencia para la prestación del servicio que propone ofrecer. Por ello se requieren estudios de viabilidad, análisis de necesidad y proyecciones regionales, un plan de salud integral y su conformidad con la legislación y reglamentación de la Junta de Planificación entre otros. Ruiz Hernández v. Mahíques, 120 D.P.R. 80, 87 (1987).
Del análisis cuidadoso del Artículo VI, apartado 25 del Reglamento, supra, surge que el inciso 1 es un criterio inicial en la evaluación de la solicitud del CNC. Una vez determinado si un municipio está saturado, la Secretaria, a tenor con los parámetros dispuestos en el inciso 2, determina si el área de servicios donde se ubicará la facilidad propuesta está saturada. Así, un municipio puede estar saturado y un área de servicio no, y viceversa. Dado que el inciso 2 establece dos entidades distintas, el análisis de saturación de éstas debe hacerse por separado. Esta interpretación encuentra apoyo en la segunda oración del inciso 2 que dispone que "se considerará saturada un área de servicio o un municipio si se sobrepasa el criterio de población aplicable". La conjunción disyuntiva "o" denota alternativa o contraposición y tiene el efecto de desvincular las palabras entre las cuales se usa. Mari Brás v. Alcaide, 100 D.P.R. 506, 515 (1972).
Concluir, como lo proponen los Opositores, que una vez se determina que un municipio está saturado no puede expedirse ningún otro CNC, equivaldría a despojar a la Secretaria de *1186 la discreción que el Artículo VI del Reglamento le otorga para eximir a un solictante del cumplimiento de todos los requisitos.
Además, dicha interpretación desembocaría en resultados contrarios al propósito de la Ley Núm. 2, supra. Por ejemplo, en un municipio que está saturado no podría expedirse más CNC aunque los laboratorios existentes estén ubicados en una sola área de servicios y los residentes, aun los de áreas considerablemente distantes, se vean obligados a trasladarse a esa área para poder recibir los servicios necesarios.
Por los fundamentos expuestos, erró el tribunal recurrido al revocar el CNC expedido a Aquarium.
Ill
En su segundo señalamiento de error, Aquarium alega que el tribunal recurrido incidió al concluir que la concesión del CNC a Aquarium afectaría adversamente a los Opositores.
Sobre el alcance de nuestra función revisora en cuanto a las determinaciones de hechos de las decisiones de las agencias administrativas, la sección 4.5 de La Ley Núm. 170 de 12 de agosto de 1988, supra, establece que "serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo."
Esta regla sirve para evitar que mediante la revisión judicial se substituya el criterio del tribunal por el de la agencia administrativa cuya actuación generalmente en materia especializada, se intenta revisar. López v. Junta de Planificación, 80 D.P.R. 646, 673 (1958).
Nuestro Tribunal Supremo ha resuelto que de ordinario los tribunales no deben intervenir con las determinaciones de hechos de un organismo administrativo cuando tales determinaciones se hallan fundamentadas en la prueba desfilada ante dicho foro. Las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto; su revisión judicial se limita a determinar si la agencia actuó ilegalmente, o en forma tan irrazonable que su actuación constituyó un abuso de discreción. Mangual Vélez v. Comisión Estatal de Elecciones, _ D.P.R. _ (1995), 95 J.T.S. 121, a la pág. 66; Fuertes v. A.R.P.E., _ D.P.R. _ (1993), 93 J.T.S. 165, a la pág. 11385; Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).
La Ley Núm. 2 en su Art. 1 inciso (y) y el Reglamento definen el término "personas afectadas" de la siguiente manera:

"Personas afectadas - Cualquier persona directamente afectada por la decisión del Secretario respecto a una solicitud de exención o certificado de necesidad y conveniencia, incluyendo:

(1).

(2) Las facilidades se salud localizadas en el área de servicio del proyecto que proveen servicios similares al propuesto.

24 L.P.R.A. sec. 334(y)(supl); Reglamento Núm. 56, Artículo II, apartado 25.
Los Opositores alegan que la Oficial Examinadora interpretó restrictivamente la definición de personas afectadas y que no consideró la evidencia presentada por ellos alegadamente tendente a demostrar que ellos se verían afectados por el establecimiento de Aquarium.
*1187 Del Informe de la Oficial Examinadora surge que una vez desfilada la prueba, ésta determinó que ninguno de los Opositores que comparecieron a la vista "tiene ni opera su laboratorio en el radio de una milla de la facilidad propuesta". Por lo cual concluyó que los Opositores no son personas afectadas de acuerdo con la definición de persona afectada contenida en el Reglamento Núm. 56, supra.
De la lectura de la definición de persona afectada surge claramente que ésta comprende cualquier persona directamente afectada por la decisión del Secretario respecto a una solicitud de excención o de un CNC. La palabra "incluyendo" evidencia que la enumeración hecha en la definición no es numerus clausus. Por consiguiente, los Opositores sí están contenidos en la defición de personas afectadas arriba transcrita. Erró la Oficial Examinadora en su interpretación.
No obstante, cabe señalar que la revisión se da contra la sentencia, no contra sus fundamentos. Sánchez v. Eastern Airlines, Inc., 114 D.P.R. 691, 695 (1983); Collado v. E.L.A., 98 D.P.R. 111, 114 (1969). Veamos si de la evidencia que obra en el expediente se sostiene la decisión de la Oficial Examinadora.
De las determinaciones de hechos contenidas en el Informe de la Oficial Examinadora surgen los siguientes hechos pertinentes:
Primero, el Municipio de Toa Alta está clasificado en la Categoría I, a los efectos de la relación de población por laboratorio clínico, según establece el Reglamento. Dicha categoría requiere una población de 14,000 habitantes por cada laboratorio. Para el año 1995 la población residente de Toa Alta era de 50,960 habitantes, contando el municipio con seis laboratorios clínicos independientes; la proporción de habitantes por laboratorio es de 8,493. Los mencionados laboratorios están ubicados en la zona urbana del municipio.
Segundo, en el radio de una milla de donde se proyecta establecer Aquarium, el Centro Comercial Terraza Malí, ubicado en la intersección de las Carreteras 165 y 159, no existe ni opera ningún laboratorio clínico. Dicha intersección queda en el Barrio Quebrada Cruz de Toa Alta, entre dicho municipio y los municipios de Corozal y Naranjito. El laboratorio clínico más cercano queda a tres millas lineales del Centro Comercial Terraza Malí.
Tercero, según señala el estudio de viabilidad presentado por Aquarium, la población residente en el radio de una milla de la facilidad propuesta para el año 1990 fue de 4,900 personas, lo que revela una densidad poblacional de 1,561 habitantes por milla cuadrada. Al añadir la población flotante de 11,952 personas (después de hacer ajustes por doble conteo, conteo del mismo vehículo, restar los vehículos de la población residente y ajustar el tránsito promedio diario de no residentes), la población total del área de servicio, es decir, del radio de una milla de la facilidad propuesta, resultó ser de 14,156 personas, utilizando como base un análisis conservador de población residente y población flotante.
Cuarto, la facilidad propuesta estará servida por una serie de arterias y carreteras (PR 159, PR 806, PR 823, PR 824, PR 8811 y PR 882), que proveen rápidos y convenientes accesos al proyecto. Tiene fácil acceso, además, a través de vías principales como las Carreteras Estatales P.R. 165 y PR 2.
Por otro lado, de la transcripción de la vista se desprende que los Opositores presentaron en evidencia una carta del Alcalde del Municipio de Toa Alta, Hon. Angel Rodríguez, y una carta firmada por siete de los médicos privados que prestan sus servicios en dicho municipio. En ambos documentos sus suscribientes expresan, basándose en apreciaciones puramente personales, que no existe necesidad alguna de establecer otro laboratorio clínico en el Municipio de Toa Alta. En adición, presentaron el testimonio de la Dra. Ruth Dávila, basado *1188 en un análisis de los clientes que ella recibe para probar el mismo punto.
Reconocemos que de la evidencia contenida en el expediente surge que los Opositores se verán afectados por la concesión del CNC a Aquarium; sin embargo, el estándar que la Ley Núm. 2 y Reglamento establecen es que en la concesión de un CNC "no se afectaránjsic] indebidamente los servicios existentes". 
Examinado el expediente no vemos cómo el establecimiento de Aquarium afectará indebidamente a los Opositores. Aquarium estará ubicado a una distancia razonable de los Opositores por lo cual éstos retendrán la clientela que proviene de la zona urbana del municipio. El mero hecho de qúe por el establecimiento de otro laboratorio clínico la clientela de los Opositores mermará no es suficiente para sustentar que no debe concederse el CNC.
Entendemos que la decisión de la Oficial Examinadora, aunque por fundamentos distintos, está apoyada por la evidencia sustancial que obra en el expediente administrativo.
Erró el tribunal recurrido al revocar el CNC otorgado a Aquarium porque éste fuera a afectar adversamente a otros laboratorios de Toa Alta.
IV
Finalmente, Aquarium aduce que el tribunal a quo incurrió en error al revocar el CNC expedido al interpretar incorrectamente el estudio de viabilidad presentado con la solicitud.
El Reglamento Núm. 56 dispone en su Artículo V(l)(d) que entre las guías generales a considerar al momento de evaluar las solicitudes se encuentra:
TO-

(d) La viabilidad económica a corto y largo plazo, así como el probable impacto del proyecto en los costos de operación y en los cargos a los usuarios por los servicios a ofrecerse por el proponente."

El tribunal recurrido interpretó que, a tenor con la disposición aquí transcrita, la viabilidad económica del laboratorio tiene que ser probada para que pueda ser expedido el CNC. No le asiste la razón.
Cuando la letra de un estatuto es clara, la ley debe aplicarse según el tenor de su letra. Art. 14 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 14; Rojas v. Méndez, 115 D.P.R. 50, 53 (1984).
Del texto del Artículo V (l)(d), supra, no puede inferirse que la viabilidad tenga que ser probada. El lenguaje de dicho artículo sólo puede llevarnos a concluir que la viabilidad económica es uno de los criterios que la Secretaria deberá considerar al evaluar la solicitud.
Para demostrar la viabilidad económica de la facilidad propuesta, Aquarium presentó un estudio de viabilidad económica y financiera preparado por la firma. Consultec. Para calcular el estimado de pruebas por paciente Consultec utilizó un estudio preparado alegadamente por la Asociación de Dueños de Laboratorios (ADL). El estudio de ADL alegadamente sostiene que los laboratorios con una clientela de 12 a 15 pacientes diarios realizan un promedio de 4.2 pruebas por paciente y que los que cuentan con una clientela de 18 o más pacientes realizan un promedio de 6 pruebas por paciente.
Para sostener la viabilidad económica de Aquarium, Consultec determinó, de acuerdo con estudio alegadamente hecho por ADL, que Aquarium atendería una clientela de 12 a 16 *1189 pacientes y realizaría un promedio de 3 pruebas por paciente.
Los Opositores cuestionaron la existencia del estudio alegadamente realizado por ADL y utilizado por Consultec. Para fundamentar su alegación presentaron en evidencia una carta del Presidente de la Junta de Directores de ADL, certificando que no tiene conocimiento, y que en sus archivos no obra evidencia de que dicho estudio haya sido realizado.
La Oficial Examinadora no admitió en evidencia dicha carta por concluir que era prueba de referencia y que la "carta no podía hacer las veces del testigo". 
La sección 3.13 (e) de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. see. 2163, al establecer la aplicabilidad de las Reglas de Evidencia al procedimiento administrativo dispone:
"(e) Las Reglas de Evidencia no serán aplicables a las vistas administrativas, pero los principios fundamentales de evidencia se podrán utilizar para lograr una solución rápida, justa y económica del procedimiento."
En el procedimiento administrativo, el debido proceso de ley permite a una parte afectada presentar toda la prueba necesaria para sostener su reclamo, así como el derecho a refutar oralmente o por escrito la evidencia sometida en su contra. López Vives v. Policía de Puerto Rico, 118 D.P.R. 219 (1987). No obstante, el Oficial Examinador tiene la discreción de aplicar los principios fundamentales de las Reglas de Evidencia tal y como lo hizo la Oficial Examinadora en el caso de autos.
Del expediente administrativo no surge que los Opositores hayan intentado controvertir la existencia del referido estudio utilizando algún otro tipo de evidencia. Por otro lado, como ya mencionamos, el estudio de viabilidad es uno de los varios criterios o guías a considerar en la evaluación de la solicitud de un CNC. Por tanto, aun habiendo admitido en evidencia la referida carta, luego de aquilatar la prueba, la Oficial Examinadora tenía discreción para recomendar la concesión del CNC.
Por todo lo anterior, resolvemos que el tribunal recurrido erró al concluir que la negativa de la Oficial Examinadora de admitir en evidencia la carta presentada por los Opositores constituyó un abuso de discreción.
Por todo lo cual, este Tribunal expide el auto de certiorari solicitado, revoca la sentencia dictada por el Tribunal de Primera Instancia y confirma la resolución de la Secretaria de Salud bajo los fundamentos antes expresados.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 97 DTA 82
1. El caso de autos fue titulado inicialmente Apelación; sin embargo, en vista de que la sentencia en el caso de autos revoca una resolución de una agencia administrativa, el recurso adecuado es el de certiorari. Por tanto, el 17 de diciembre de 1996, este Tribunal ordenó a la Secretaria General reasignar al caso la numeración correspondiente a un auto de certiorari.
*1190 2.El Artículo VI (15) del Reglamento Núm. 56 del Departamento de Salud dispone que "se considerará saturada un área de servicio o municipio si se sobrepasa el criterio de población aplicable. ”
3. Esta controversia fue resuelta anteriormente por este Tribunal en Laboratorio Clínico Expreso v. Laboratorio Clínico Lomar, por el Panel compuesto por su Presidenta la Jueza Rivera de Martínez y los Jueces Cabán Castro y Rivera Pérez y en Laboratorio Clínico Turabo v. Secretario de Salud.
4. El Artículo VI del Reglamento dispone en lo pertinente que:
"Cuando una solicitud compare favorablemente con todos los criterios aplicables, previa la celebración de la vista y no haber oposición fundamentada, la solicitud deberá ser aprobada y se otorgará el certificado solicitado. Cuando la misma no llene uno o más de los criterios aplicables, la solicitud podría ser denegada....". (Enfasis nuestro.)
Artículo VI del Reglamento Núm. 56 del Departamento de Salud.
5. Véase el Apéndice de la Petición de Certiorari, a las págs. 38-45.
6. El Centro de Salud Familiar de Toa Alta cuenta con un laboratorio clínico.
7. Su análisis carece de valor empírico ya que se basó únicamente en el conteo de los clientes atendidos en el mes de marzo de 1995, según el barrio de procedencia.
8.24 L.P.R.A. see. 334 (e); Reglamento Núm. 56 Artículo II (5).
9. Véase la Transcripción de la vista a la pág. 207 del Apéndice de la Petición de Certiorari.