RAMON APONTE CASTRO
Demandante-Apelante

v.

ASOCIACION DE RESIDENTES DE SAN JUAN GARDENS,

## HORIZON Y ROMANY INC.
Demandados-Apelados

Núm. KLAN-96-01168

San Juan, Puerto Rico, a 14 de abril de 1997

Panel integrado por su Presidenta, Jueza Fiol Matta,
Jueza Rodríguez de Oronoz y el Juez Gierbolini

Fiol Matta, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Mediante recurso de apelación el demandante-apelante nos solicita la revisión de una sentencia sumaria dictada el 14 de octubre de 1996 por el Tribunal de Primera Instancia, Sala Superior de San Juan, que desestimó la demanda y declaró con lugar la reconvención. Examinados los escritos de las partes y el derecho aplicable, confirmamos la sentencia apelada.

### I

El apelante, Ramón Aponte Castro, es residente y propietario de una residencia en la calle San Joaquín, número 1880 en la Urbanización San Juan Gardens. Para el año 1991, la Asociación de Residentes de San Juan Gardens, Horizon y Romany, Inc., en adelante apelados, comenzaron gestiones para solicitar al Municipio de San Juan el establecimiento de un control de acceso bajo las disposiciones de la Ley 21 del 20 de mayo de 1987, 23 L.P.R.A. 64.

En fechas que no surgen del expediente y que tampoco fueron precisadas en instancia, los apelados circularon a los residentes dos documentos, uno titulado *"Cuestionario"* y el otro *"Consentimiento"*. El primero fue el único que aparece firmado por el apelante e indica que está de acuerdo con el cierre de la urbanización.

Obtenido el consentimiento del 75% de los residentes, según requerido por ley, el 29 de abril de 1992 el Municipio de San Juan celebró vista pública y el 28 de diciembre del mismo año la Asamblea Municipal de San Juan aprobó una resolución autorizando el cierre de las urbanizaciones. A los residentes que se opusieron en forma afirmativa se les garantizó en la resolución los derechos que la ley les concede como opositores del proyecto.

Así las cosas, el apelante abonó la derrama inicial de $500.00 que se recolectó para comenzar el proyecto. Una vez construido, pagó las cuotas de mantenimiento por más de un año. El 1ro. de marzo de 1994, escribió una carta a la Asociación apelada en la que expresa lo que copiamos a continuación:

*"En el mes de diciembre de 1993 me diriji [sic] a usted para notificarle que no podía continuar asumiendo la responsabilidad del pago de cuotas y mensualidades con la asociación de residentes. **En ese entonces las cuotas y mensualidades del subscribiente [sic] estaban al día.**"* Énfasis suplido.

En respuesta a su carta, el Presidente de la Asociación, Rafael Florit Lebró, le escribió el 31 de marzo informándole de su deuda. Según reza la *"Petición"* presentada por el aquí apelante ante el Tribunal de Primera Instancia:

*"Ante tal situación el demandante logró un acuerdo con el Dr. Florit Lebró, a los efectos de pagar una cuenta mensual de $10.00 a partir de la fecha del acuerdo, que incluia la eliminación del pago de cualquier cuota atrasada. Así las cosas el demandante comenzó a hacer pagos de $10.00 mensuales, hasta que nuevamente la asociación le envía una carta fechada 7/13/95 al demandante, indicándole que tiene atrasos en el pago de su cuota por la cantidad de $1,110.00".* Petición, pág. 2.

En su demanda de 31 de octubre de 1995, titulada *"Petición"*, el señor Aponte y su esposa alegan que nunca habían prestado su consentimiento al cierre de la urbanización, por lo que no debían ningún dinero y solicitaron la devolución de todo el dinero pagado hasta dicha fecha. La apelada contestó y reconvino, reclamando el dinero alegadamente adeudado. El Tribunal de Primera Instancia celebró vista el 7 de marzo de 1996 y el 19 de julio el apelante solicitó que se dictara sentencia sumaria a su favor, alegando la inexistencia de controversias de hechos. (Reconoce en su escrito que *"la controversia en este caso se reduce a si el demandante prestó su consentimiento para establecer el control de acceso de la urbanización donde reside"*. Moción de sentencia sumaria, pág. 2. Aparentemente, entendió que los documentos que obran en autos sostenían incontrovertiblemente que no era así, porque, según señala, el documento titulado *"Cuestionario" "no es el documento de consentimiento que la asociación de residentes sometió al municipio de San Juan"*. *Id.*, pág. 3. La apelada se opuso a la solicitud de sentencia sumaria por entender que estaban en controversia los siguientes hechos materiales:

*"...Si el demandante prestó su consentimiento al someter escrito bajo su firma y la de su esposa.*

*Si el haber abonado la derrama inicial y la cuotas de mantenimiento por más de un año constituye una ratificación de su consentimiento.*

*Si la comunicación del demandante de 1 de marzo de 1994 constituye otro elemento de corroboración y ratificación a su consentimiento. Oposición a solicitud de sentencia sumaria,"* pág. 1.

El 14 de octubre de 1996, el Tribunal de Primera Instancia desestimó la demanda y dictó Sentencia Sumaria a favor de la apelada, condenando a los apelantes al pago de $1,630.00 por concepto de las cuotas adeudadas. Ante este foro apelativo el señor Aponte Castro señala la comisión de los siguientes errores:

*"Cometió error el Tribunal de Primera Instancia al hacer determinaciones de hechos sin que se ofreciera prueba por las partes sobre esos hechos, todo ello en violación a lo establecido en la vista sobre los procedimientos del día 7 de marzo de 1996 y en violación al debido proceso de ley.*

*Erró el Tribunal de Primera Instancia al negarse a adjudicar las alegaciones del demandante referente a sus derechos constitucionales consagrados en los Artículos II, Sec. 7, Artículo II, Sec. 1 de*

*la Constitución del Estado Libre Asociado de Puerto Rico, y al negarse a declarar la ley de control de acceso inconstitucional."*

## II

El expediente apelativo demuestra que si bien al celebrar vista el 7 de marzo de 1996, el Tribunal de Primera Instancia determinó que a la luz de los hechos alegados por el apelante era recomendable hacer un buen descubrimiento de prueba, el propio apelante fue el que más tarde solicitó que se dictase sentencia sumaria por no haber entre las partes ninguna controversia de hecho material. Según expuso en su solicitud, la controversia se reducía a si el demandante, aquí apelante, había prestado su consentimiento al sistema de control de acceso de la urbanización donde reside. Los hechos, es decir, los documentos sometidos y los actos del apelante, a saber, el pago de la derrama inicial y de los plazos mensuales de la deuda, así como su solicitud de un plan de pago y el cumplimiento parcial con éste, no estaban en controversia. Sólo era controvertible la interpretación que cada parte otorgaba a estos hechos. Es por ello que el Tribunal de Primera Instancia determinó que no existía controversia sobre los hechos esenciales del caso y procedió a hacer sus propias inferencias y a dictar sentencia sumaria a favor del demandado-apelado.

La Ley Núm. 21 de 1987, según enmendada por la Ley Núm. 156 de 1988, 23 L.P.R.A. 64(a) dispone lo siguiente:

*"Una autorización para solicitar el permiso para controlar el acceso o accesos a la urbanización, prestada voluntariamente por un propietario mayor de edad y en representación de una vivienda obligará al propietario a cumplir con lo dispuesto en la sec. 64d-3 de este título y estará en pleno efecto y vigor mientras no se emita un documento escrito que claramente revoque la autorización prestada con fecha anterior. Una revocación de autorización para solicitar el permiso para controlar el acceso o accesos a la urbanización, calle o comunidad, será válida únicamente si se presenta en cualquier momento hasta la fecha de celebración de la primera vista pública."*

La mencionada sección no requiere forma particular alguna para la autorización; sólo que se haga *"expresamente y por escrito en el momento en que se lleve la cabo la gestión para obtener de los propietarios las autorizaciones necesarias para solicitar el permiso de control de acceso". Ibid.*

Por su parte, la Sección 10 de la ley, 23 L.P.R.A. 64d3, impone la obligación de pago a [l]os propietarios que autorizaron la solicitud para establecer el control de acceso, según fue implantado (inciso 2) y *"[l]os propietarios que no autorizaron expresamente el establecimiento del sistema de control de acceso, pero que en fecha posterior se comprometieron al pago mediante contrato escrito"* (inciso 5).

Surge de lo anterior que para oponerse al control de acceso basta con que el residente no preste su autorización a la Asociación para que se gestione el permiso. Ahora bien, aquel residente que en un principio haya dado esa autorización no podrá revocarla después de la primera vista pública que celebre el municipio. La autorización inicial no revocada obliga al residente a cumplir con todas las responsabilidades que impone la ley. *Caguas v. Asoc. de Residentes,* **93 J.T.S. 127.** De igual forma, se reconoce la validez del consentimiento prestado con posterioridad.

Es evidente que la ley contempla que de esta forma se constituye un contrato vinculante entre el residente y la Asociación. Es igualmente evidente la intención legislativa de evitar que el esquema estatuido pueda derrotarse mediante la merma en fondos que pueda resultar del arrepentimiento posterior de los residentes. Por eso, nos parece pertinente recurrir al ordenamiento civil para descifrar la naturaleza de las actuaciones del aquí apelante y poder determinar si constituyen prueba de un consentimiento contractual.

Dispone el Artículo 1234 del Código Civil, 31 L.P.R.A. 3472, que para juzgar la intención de los contratantes deberá atenderse principalmente a los actos de éstos, coetáneos y posteriores al contrato. Resolvemos que el conjunto de actos llevados a cabo por el apelante, ésto es, el pago de la derrama inicial, el pago de las mensualidades y la solicitud de plazos para cumplir con los pagos, junto al llamado *"Cuestionario",* configuran el consentimiento contractual necesario para obligarlo a cumplir las obligaciones resultantes del cierre de su urbanización.

Por otro lado, estos actos también suscitaron en la asociación de residentes la confianza de que no se cuestionaban las obligaciones del apelante frente al cierre. Recordemos que a nadie le es lícito ir contra sus propios actos, cuando éstos han engendrado una apariencia de realidad susceptible de influir en la conducta de los demás, si ello en efecto induce a otra persona a obrar de manera tal que se le causaría un perjuicio si su confianza quedara defraudada. *Int. General Electric v. Concrete Builders,* 104 D.P.R. 871, 878 (1976).

Esta norma jurisprudencial pretende proteger a los que confían en el estado de derecho que ha creado un sujeto mediante su conducta reiterada, evitando que aquél a quien es imputable el acto unilateral pueda actuar contrario a su voluntad declarada. Por eso, todo el que suscita no sólo una apariencia jurídica, sino una expectativa seria de una conducta futura, debe ser consecuente con la expectativa suscitada. Diez-Picazo, *La Doctrina de Los Actos Propios*, Ed. 1973, pág. 143.

En atención a lo anterior, no puede el apelante alegar que nunca consintió al cierre de las urbanizaciones y/o al pago de las mensualidades. Por otra parte, habiendo consentido el apelante al cierre, no es necesario expresarnos sobre la alegación de inconstitucionalidad de la ley. Es también norma trillada que los tribunales no deben abordar planteamientos constitucionales si no es necesario para resolver el asunto planteado. *P.P.D. v. Administrador General de Elecciones,* 111 D.P.R. 199 (1981); *Mari Bras v. Alcaide,* 100 D.P.R. 506 (1972); *Pueblo ex rel M.G.G.,* 99 D.P.R. 925 (1972); *Walker v. Tribl. Contribuciones,* 72 D.P.R. 698 (1951); *Spanish American Tobacco Co. v. Buscaglia,* 71 D.P.R. 991 (1950); *Pueblo v. García & García,* 22 D.P.R. 817 (1915).

Se confirma la sentencia apelada.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General